[No. 35359. *En Banc.* December 29, 1960.]

PAUL D. WOOD, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 358 P. (2d) 140.

*Koenigsberg & Hepfer,* for appellant.

*A. C. Van Soelen* and *William W. Brown,* for respondent.

OTT, J.—In 1946, Paul D. Wood suffered an injury which resulted in the amputation of his right leg. He became experienced in the use of crutches. April 2, 1957, at approximately 7:10 p. m., he boarded a city bus without assistance, and sat behind the driver. Upon arriving at his destination, and being the only remaining passenger in the bus, he walked with the aid of his crutches to the platform above the front steps. He stopped, looked at the bus driver, then looked down at the steps, saw and recognized their condition, descended one step, and, as he put his weight on the crutches to descend to the second step, the right crutch slipped on the wet rubber matting. He fell to the sidewalk and was injured.

Wood commenced this action against the city to recover damages for his injuries, contending that the city was negligent "In failing to repair or maintain the steps of said bus in proper condition, in that the ribbed rubber was worn smooth, making the same dangerous," and that the operator of the city's bus was negligent "In failing to offer and render assistance to the plaintiff in descending the said steps," which acts of negligence were the direct and proximate cause of his injury.

The city's answer denied the allegations of negligence, and alleged that the plaintiff was guilty of contributory negligence, *inter alia,* in failing to use the steps of the bus properly while alighting, in jumping from the bus to the

sidewalk, and in "Failing to request assistance in getting off the bus." The reply denied the allegations of contributory negligence.

The defendant moved for summary judgment and for dismissal of the plaintiff's complaint with prejudice.

In ruling on these motions, the court considered the pleadings and, without objection by either party, the testimony of Paul D. Wood given at a former trial, together with his affidavit, the depositions of three witnesses, and certain exhibits. The court held that

". . . admitting and assuming that the defendant was guilty of negligence as a matter of law, because of failure to offer to assist the plaintiff in disembarking from the bus, and assuming that such assistance would have been accepted and would have prevented the plaintiff from falling and injuring himself, and assuming that the steps were worn and wet, the court concludes that the plaintiff was contributorily negligent as a matter of law, or assumed the risk and knowing of the danger proceeded to invite, create and proceed into the very thing of which he now complains, and that there remains no genuine issue as to any material fact and that the defendant City of Seattle, the moving party, is entitled to judgment as a matter of law; . . . "

From a judgment of dismissal with prejudice, the plaintiff has appealed.

Appellant's three assignments of error all relate to the court's determination that the appellant was guilty of contributory negligence, as a matter of law.

■ Whether a passenger's conduct in alighting from a bus, under the circumstances then present, constitutes contributory negligence is determined by the test of that conduct which would be exercised by a reasonably prudent man acting under similar circumstances and conditions. *Heinlen v. Martin Miller Orchards,* 40 Wn. (2d) 356, 242 P. (2d) 1054 (1952). What a passenger's conduct is or was at a given time is factual. Whether a person's conduct has met the reasonably prudent man test is a question of fact for determination by the jury, unless reasonable minds could not differ in their conclusions. *West v. Mount Vernon*

*Sand & Gravel, Inc.,* 56 Wn. (2d) 752, 355 P. (2d) 795 (1960), and case cited.

Appellant's testimony relative to his conduct at the time in question was as follows:

"Q. When you approached the steps did you look at them? A. Yes. Q. Did you form any impression about them one way or the other? A. Yes. Q. What was the impression you had then about the steps? A. Well, I had the impression that I had to be very careful going on the steps in order to make the descent. Q. Why did you have that impression? A. They looked like they were a little dangerous on account of being wet, and the ribbing was worn, it was smooth. Q. Now, all of this you knew before you started down the steps; is that right? A. Yes; I saw it. Q. Now, at this time you also knew you were using crutches; isn't that right? A. That's right. Q. How long had you used these crutches, Mr. Wood? A. Well, I couldn't say definitely. I haven't worn them—I haven't used them steady. I couldn't say definitely. Q. But could we say that you were experienced in the use of crutches? A. Yes, I was. Q. You knew what you could do and couldn't do on those crutches; is that right? A. Yes. Q. And you knew that when you were there at the head of the stairs ready to go off the bus? A. Yes. Q. Now, at that time you didn't ask the operator for assistance; is that correct? A. No, but I looked at him and expected assistance. Q. Now, at that point can we say then that at that point you took a chance? A. What do you mean, I took a chance? Q. I mean it this way: You knew what you could do and what you couldn't do with the crutches? A. Yes. Q. You knew about the steps? A. Yes. Q. Now, you had a choice, didn't you? A. Yes. . . . Q. Mr. Wood, you could ask the operator for assistance at that point or you could take a chance and get off the bus on your own; isn't that right? A. I don't know whether I could ask—I didn't know whether that was on the bill of fare, whether they were supposed to help me or not, for sure. Q. But did you figure at that point that you needed assistance? A. Yes. Q. You knew that fact? A. Yes. . . . Q. Mr. Wood, did you say anything at all to Mr. England before you got off the bus? A. Before I got off? Q. Just before you got off the bus. A. No, I didn't say anything. . . .

"Q. When you told counsel that you thought the steps were hazardous, what did you mean by that? A. It looked like I had to take very much precaution in alighting, and take my time."

■ Applying the reasonably prudent man test of conduct to the facts in the instant case, we are unable to hold, as a matter of law, that the appellant was guilty of contributory negligence. The appellant testified that he was not certain that he was entitled to assistance, and that, when he looked at the bus driver, he expected to receive assistance if he was entitled to it. That he looked at the bus driver as he approached the door or after he observed the steps was denied by the driver. Appellant further testified that seventy or eighty per cent of the time he rode the buses, the operators would assist him down the steps, and that he had never been refused assistance. Whether he knew or should have known that he was entitled to assistance was a disputed fact.

The appellant testified that he took every precaution for his own safety in alighting from the bus. Respondent contends, *inter alia,* that he jumped to the sidewalk and did not use the steps. From this evidence, the trier of the facts must resolve two questions: (1) What were appellant's acts or omissions, and (2) did appellant's conduct meet the requirements of the reasonably prudent man test.

■ In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmovant party and, when so considered, if reasonable men might reach different conclusions, the motion should be denied because a genuine issue as to a material fact is presented. *Brannon v. Harmon,* 56 Wn. (2d) 826, 355 P. (2d) 792 (1960). Considering appellant's evidence most favorably to him (for the purposes of this motion), we find that it presented a genuine issue of fact relative to his contributory negligence, and that the court erred in granting the motion for summary judgment.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

ALL CONCUR.