[No. 43328.    En Banc.    January 30, 1975.]

BARBARA LaPLANTE *et al, Appellants*, v. THE STATE OF WASHINGTON, *Respondent.*

*Nashem, Prediletto, Brooks & Schussler* and *Terry A. Brooks,* for appellants.

*Slade Gorton,* Attorney General, and *Earl R. McGimpsey, Assistant,* for respondent.

*Daniel F. Sullivan,* amicus curiae.

STAFFORD, C.J.—Barbara and Joe LaPlante (appellants) seek review of a trial court's order granting the State's motion for summary judgment.

On May 31, 1972, Barbara LaPlante and James Davie were paying passengers in a taxicab owned and operated by Bessie Matheny, doing business as Berry's Cab. An accident occurred as Mrs. Matheny attempted to make a U-turn on Highway 97. Mr. Davie was killed and Mrs. LaPlante was seriously injured.

The facts supplied by pleadings, depositions, interrogatories, accompanying exhibits and relied on by appellants reveal that immediately prior to the accident Mrs. Matheny stopped the cab, shifted gears and saw Dr. Buckley's automobile approaching from the opposite direction in the right-hand (outside) lane. She estimated that it was about 500 feet away traveling at a speed of 80 miles per hour or more.

After making her unobstructed observation of the Buckley vehicle, Mrs. Matheny concluded she had a sufficient margin of safety to commence and complete a "U" turn and proceeded to enter the lane of oncoming traffic. The Buckley car collided with the taxicab at a speed estimated at between 90 and 100 miles per hour immediately before impact.

At the time of the accident Mrs. Matheny had in her possession a valid Washington State driver's license which had been renewed June 2, 1970. The license contained no restrictions, although the attached photograph showed her

wearing glasses. It should be noted that at the time of the accident Mrs. Matheny was wearing glasses prescribed by Dr. Roy J. Ralston about 2 years prior thereto.

Pretrial discovery also revealed that Mrs. Matheny had a history of glaucoma and early evidence of cataracts. Prior to the May 1972 accident, she had had her eyes examined on several occasions by Dr. James P. Thompson, M.D., an ophthalmologist, and Dr. Roy J. Ralston, an optometrist. Dr. Thompson was visited on two occasions in 1964 at which time he corrected her vision to 20/40 Snellen. In April 1965, she again visited Dr. Thompson at which time he corrected her vision to 20/70 Snellen in her right eye and 20/40 Snellen in her left eye. In February 1967, he measured her visual acuity as 20/100 Snellen corrected for both eyes. Later, in May of 1969, Mrs. Matheny visited Dr. Ralston's office. At that time he was able to correct her vision to 20/30 Snellen in both eyes. On June 2, 1970, Mrs. Matheny passed a State-administered vision examination which required 20/40 Snellen visual acuity. As a result, her driver's license was renewed.

Mrs. Matheny insists she had obtained the glasses she was wearing at the time of the accident from Dr. Ralston in 1970, prior to the driver's license renewal examination. However, Dr. Ralston's records indicate that Mrs. Matheny visited his office in January 1971, some 8½ months *after* the license was issued, and that her corrected vision at that time was 20/50 Snellen. This Snellen rating coincides with the one found by Dr. Thompson on August 9, 1972, following the accident.

In his deposition Dr. Thompson indicated that he would not expect Mrs. Matheny's vision to be above 20/40 minus Snellen which he had found in 1964. There is, however, nothing in the record to indicate what corrected Snellen rating she had at or about the time of the accident.

The record also discloses that prior to the accident Chief Larson of the Toppenish Police Department sent a "Recommendation for Driver Re-Examination" form to the Depart-

ment of Motor Vehicles. Based upon his own personal observations and unverified oral complaints, he suggested that the department "check accident reports for number of accidents in which she has been involved." No mention was made of any suspected problems with her eyesight.

The department made the requested check of Mrs. Matheny's accident record and reported that her record disclosed only two entries for accidents (one in 1967 and one in 1970) neither of which were chargeable and that no citations had been issued for traffic violations.[1] Under the circumstances the Chief of Police was informed by letter that the department did not feel it had sufficient basis for requiring a re-examination. However it went on to say:

> If you can provide us with specific incidents wherein her driving was found to be hazardous, or which would give us good cause to believe that she is incompetent or otherwise not qualified to be licensed, we will be glad to schedule her for re-examination or take other appropriate action.

The department received no further communication from Chief Larson.

Based on the foregoing, appellants alleged the State was negligent in renewing Mrs. Matheny's driver's license when it knew or should have known her vision did not meet the minimum of 20/40 Snellen as required by WAC 308-104-010. Appellants alleged further that the State was negligent in failing to re-examine Mrs. Matheny pursuant to Chief Larson's request.[2]

The State moved for a summary judgment in its favor. The trial court granted the motion, holding that the facts did not establish a duty owed to appellants by the State and holding further that the acts of the State's employees

---

[1] The State concedes, however, that in 1956 she had an intersection collision in the fog for which she was cited.

[2] Appellants also filed claims against Dr. Buckley, Vernon and Bessie Matheny and the Colonial Insurance Company. They were settled out of court and thus are not at issue here.

were discretionary, thereby immunizing the State from liability.

■ A judgment that is correct "can be sustained on any theory within the pleadings and the proof." *Thompson v. Thompson*, 82 Wn.2d 352, 355, 510 P.2d 827 (1973). We affirm the summary judgment on other grounds, and thus find it unnecessary to resolve the questions of "duty" and "discretion" raised by the trial court's ruling.

■ The purpose of summary judgment is to avoid a useless trial when there is no genuine issue of any material fact. If, however, there is a genuine issue of material fact a trial is necessary. It is the trial court's function to determine whether such a genuine issue exists. The burden of proving, by uncontroverted facts, that no genuine issue exists is upon the moving party. *See Regan v. Seattle*, 76 Wn.2d 501, 458 P.2d 12 (1969); *Hughes v. Chehalis School Dist. 302*, 61 Wn.2d 222, 377 P.2d 642 (1963); *Jolly v. Fossum*, 59 Wn.2d 20, 365 P.2d 780 (1961); *Bates v. Bowles White & Co.*, 56 Wn.2d 374, 353 P.2d 663 (1960); *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960).

When a motion for summary judgment is supported by evidentiary matter, the adverse party may not rest on mere allegations in the pleadings but must set forth specific facts showing that there is a genuine issue for trial.[3] *W.G. Platts, Inc. v. Platts*, 73 Wn.2d 434, 438 P.2d 867, 31 A.L.R.3d 1413 (1968); *Tait v. KING Broadcasting Co.*, 1 Wn. App. 250, 460 P.2d 307 (1969); *McGough v. Edmonds*, 1 Wn. App. 164, 460 P.2d 302 (1969). If no genuine issue of material fact exists it must then be determined whether the moving party is entitled to judgment as a matter of law. CR 56(c). *See also Brannon v. Harmon*, 56 Wn.2d 826, 355 P.2d 792 (1960).

■ In challenging the instant summary judgment appellants stress the fact that the legislature has abolished sovereign immunity for tortious conduct whether the State

---

[3]Opposing affidavits may be served by the adverse party prior to the day of hearing. CR 56(c).

is "acting in its governmental or proprietary capacity."[4] However, this fact alone is not dispositive of the issues. The statute merely provides a remedy. It does not, in and of itself, establish a right to recover. The basic elements of an alleged tort must still be established before the State is deemed liable. *See Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965).

The tort complained of in the case at hand is negli-gence, which consists of (1) the existence of a duty owed to the complaining party, (2) a breach thereof, and (3) a resulting injury. *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 412 P.2d 109 (1966); *Christensen v. Weyer-haeuser Timber Co.*, 16 Wn.2d 424, 133 P.2d 797 (1943). For legal responsibility to attach to the negligent conduct, the claimed breach of duty must be a proximate cause of the resulting injury. *Pratt v. Thomas*, 80 Wn.2d 117, 491 P.2d 1285 (1971); *Ferrin v. Donnellefeld*, 74 Wn.2d 283, 444 P.2d 701 (1968); *Leach v. Weiss*, 2 Wn. App. 437, 467 P.2d 894 (1970). Thus, even if the State is negligent its liability, if any, must rest on its negligence being a proximate cause of the accident.

While issues of negligence and proximate cause are not generally susceptible to summary adjudication, courts are not precluded from rendering such judgments. *See* 6 J. Moore, *Federal Practice* ¶ 56.17[42], at 2583-88 (2d ed. 1948). *See also Ferrin v. Donnellefeld, supra.* The issues of negligence and proximate cause must be accorded the same treatment as any other following a motion for summary judgment, *i.e.*, if the court determines there is no genuine issue of material fact then it must determine whether the moving party is entitled to a judgment as a matter of law. Further, where the facts are undisputed and do not admit of reasonable differences of opinion, the question of proxi-

---

[4]RCW 4.92.090:

"Tortious conduct of state—Liability for damages. The state of Washington, whether acting in its governmental or proprietary capac-ity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

mate cause is one of law subject to review by this court. *Pratt v. Thomas, supra; Ward v. Zeugner,* 64 Wn.2d 570, 392 P.2d 811 (1964); *White v. Greyhound Corp.,* 46 Wn.2d 260, 280 P.2d 670 (1955); *Cook v. Seidenverg,* 36 Wn.2d 256, 217 P.2d 799 (1950).

The undisputed evidence is that Mrs. Matheny stopped and in fact *saw* the Buckley automobile approaching the intersection for quite some distance. From a place of safety *she concluded that she had a sufficient margin of safety to enter the oncoming lane of traffic and did so.* Unfortunately *her judgment was faulty* and the collision followed. Appellants have furnished no specific facts showing that there is a genuine issue for trial on this point. Under these circumstances we can say as a matter of law that the negligence of the State, if there was any, was not a proximate cause of the accident. The State's actions were totally unrelated to *Mrs. Matheny's decision* to enter the lane of traffic *after seeing the approaching* automobile. The only proof is that the proximate cause of the accident was a *judgmental error* by Mrs. Matheny—*not a failure to see or an inability to see.*[5] There being no proximate cause, legal responsibility will not attach to the alleged negligence of the State.

The judgment of the trial court is affirmed.

FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

---

[5] Neither RCW 46.20.130 nor WAC 308-104-010 requires a depth perception test and depth perception deficiency is not alleged or argued in this case.