[No. 51084-9. En Banc. April 11, 1985.]

RICHARD S. HARTLEY, *as Personal Representative,* ET AL, *Respondents,* v. THE STATE OF WASHINGTON, ET AL, *Petitioners.*

*Kenneth O. Eikenberry, Attorney General,* and *Michael E. Tardif, Assistant,* for petitioner State.

*Burgess, Kennedy, Fitzer & Strombom, P.S.,* by *Timothy R. Gosselin,* for petitioner Pierce County.

*Rush, Kleinwachter, Hannula & Harkins, Daniel L.*

*Hannula, Bradford E. Furlong, Loucks, Lamb, Oros & Jankovich,* and *Dan B. Oros,* for respondents.

DOLLIVER C.J.—This case was certified to this court for direct review by Division Two of the Court of Appeals prior to a hearing on the merits. Defendants, State of Washington and Pierce County, appeal the trial court's dismissal of their motion for summary judgment. The State and County sought to be dismissed as defendants in a personal injury and wrongful death action brought by the husband and minor children of a woman killed in an automobile collision. In turn plaintiffs (the Hartleys) moved, as part of their brief before the Court of Appeals, for dismissal of this appeal and remand for trial.

We conclude the appeal is properly before this court. We further conclude there is not sufficient legal causation to implicate the County and State as defendants, thus their motion for summary judgment should be granted.

Since this case is before the court on an interlocutory review, there are no trial court findings of fact. The following facts, however, are undisputed: Janet Hartley was killed when an automobile driven by Eugene R. Johnson crossed the center line and collided with her auto February 6, 1980, on a highway between Tacoma and Puyallup. Johnson was intoxicated at the time of the collision and was charged with negligent homicide. He has since pleaded guilty.

Johnson possessed a valid driver's license at the time of the collision. This license was a reinstatement issued to him on November 9, 1979, by the Washington State Department of Licensing (DOL) following a 1–year revocation. Prior to causing Mrs. Hartley's death, however, Johnson had been arrested numerous times for driving while intoxicated, and had been arrested for driving without a valid driver's license. Because of these offenses, Johnson was subject to a revocation of his driver's license for 5 years under the Washington Habitual Traffic Offenders Act (HTOA), RCW 46.65.

The HTOA enunciates the following state policy:

(1) To provide maximum safety for all persons who travel or otherwise use the public highways of this state; and

(2) To deny the privilege of operating motor vehicles on such highways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her courts and the statutorily required acts of her administrative agencies; and

(3) To discourage repetition of criminal acts by individuals against the peace and dignity of the state and her political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.

RCW 46.65.010. The statute provides for license revocation as a means of effectuating this policy.

Prior to June 1979, county prosecutors were responsible for initiating HTOA proceedings after notice from the Department of Motor Vehicles. Laws of 1971, 1st Ex. Sess., ch. 284, §§ 5, 6, 7, 8. After June 1979, the statute was amended to make the DOL responsible for HTOA proceedings. RCW 46.65. Thus, as a resident of Pierce County at the time he was subject to HTOA revocation, Johnson could have had his license revoked by either the State, Pierce County, or both. An affidavit filed by defendants indicates the statute was changed to provide for an administrative proceeding rather than a judicial proceeding because of the small number of cases actually adjudicated prior to 1979 (11,000 referrals were still outstanding).

A major dispute between the parties concerns the validity of an affidavit filed by plaintiffs in which Johnson attests to the following: (1) He was intoxicated at the time of the accident; (2) he presently is aware his driving offenses would have subjected him to HTOA revocation of license; (3) the DOL had reinstated his license during the period when he was subject to the HTOA; (4) he has not driven since his license was revoked in 1980; and (5) he would not have been driving if his license had been revoked. Another affidavit from Johnson, which is undis-

puted, indicates that he has no assets, that he has been unemployed since December 1982, and that the entire amount of his insurance policy ($15,000) has been offered to plaintiffs.

Further areas of disputed fact concern notice of Johnson's various infractions. The County contends it did not receive notice of Johnson's HTOA status from the State. The State, in turn, contends it could not have received notice of Johnson's conviction for driving with a revoked license on June 2, 1979, in time to affect reinstatement of his license in November of 1979, or in time to revoke his license prior to the collision with Mrs. Hartley.

After a motion to dismiss for failure to state a claim was denied by the trial judge, defendants filed a motion for summary judgment which was also denied.

Plaintiffs raise a single issue: Are the questions of law presented to the Court of Appeals and transferred to this court improperly brought on discretionary review? Defendants' appeal of the trial court's refusal to grant their motion for summary judgment raises the following issues: (1) Do plaintiffs present an issue of material fact upon which reasonable minds could disagree? (2) Was the failure of the State or County to institute HTOA proceedings against Eugene Johnson a proximate cause of Mrs. Hartley's death? (3) Were the State and County exempt from liability under the public duty doctrine because the duty owed to Mrs. Hartley was a duty owed to the public in general? (4) Is the State or County immune from liability for failure to take action against persons subject to license revocation under the HTOA? (The State asserts general governmental immunity for high level discretionary acts. The County asserts prosecutorial immunity.)

A conclusion supporting plaintiffs as to the inappropriateness of appellate review would result in remand for trial without reaching the other issues. For this reason, we address that question first. A conclusion supporting either the State or County on any of the remaining issues would warrant its dismissal as a party, and reversal of the trial

court's decision to deny summary judgment as to that party.

## APPROPRIATE APPELLATE REVIEW

The Commissioner for Division Two of the Court of Appeals granted review December 22, 1983, recognizing review of a denial of summary judgment was proper to avoid a useless trial. *See Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 652 P.2d 948 (1982). The Commissioner also referred to the trial judge's own statement that appellate review was appropriate. Plaintiffs moved to modify the Commissioner's ruling. This motion was denied.

The Court of Appeals then transferred the case to this court pursuant to RAP 4.2(a)(4) as a matter of "broad public import" appropriate for disposition by the Supreme Court.

The Hartleys contend discretionary review under RAP 2.3 is not proper in this case. They argue the trial court did not commit obvious error in denying summary judgment, nor would a trial be useless. They distinguish *Glass v. Stahl Specialty Co., supra,* on the basis that the earlier case involved application of new and novel legislation, whereas, under their analysis this case is covered by established case law.

Plaintiffs further argue that admission of evidence at trial would have been discretionary with the trial judge, overturned only for an abuse of discretion. *Jones v. Robert E. Bayley Constr. Co.*, 36 Wn. App. 357, 359, 674 P.2d 679 (1984). Thus, they argue appellate review is premature, and they are entitled to a chance to prove their case in court.

Judicial policy generally disfavors interlocutory appeals. *Maybury v. Seattle*, 53 Wn.2d 716, 721, 336 P.2d 878 (1959). In this instance, however, we are interpreting a new statute with wide implications for governmental liability. Thus, the issues are similar to those in *Glass,* in which we determined denial of a summary judgment motion to dismiss a party was not a final judgment, but was nevertheless appealable. In *Glass,* we found the trial court had

committed "obvious or probable error" in its interpretation of the tort reform act, RCW 4.22.040; therefore, the case was treated as appropriate for discretionary review under RAP 2.3(b) and RAP 5.1(c). *Glass,* at 883. We reach a similar conclusion in this case. The questions of law raised as to the interpretation of the HTOA are appropriate for review. A useless lawsuit would be prevented by a decision in favor of dismissing the State and County as defendants.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). *Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 613, 664 P.2d 474 (1983); *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

■ On summary judgment motions, the reviewing court takes the position of the trial court, assuming facts most favorable to the nonmoving party. *Wilson v. Steinbach, supra* at 437; *Highline Sch. Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wn.2d 528, 503 P.2d 108 (1972); *Wood v. Seattle,* 57 Wn.2d 469, 473, 358 P.2d 140 (1960). The burden is on the moving party to prove there is no genuine issue as to a fact which could influence the outcome at trial. *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). *See also Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256–57, 616 P.2d 644 (1980) (summary judgment is not appropriate when reasonable minds might reach different conclusions); *Rounds v. Union Bankers Ins. Co.,* 22 Wn. App. 613, 617, 590 P.2d 1286 (1979) (if there is a genuine issue of credibility, summary judgment should be denied).

The State and County argue they are entitled to summary judgment, dismissing them as defendants on the following alternative theories: (1) The alleged causal

connection between their failure to revoke Johnson's license and the resultant death of Mrs. Hartley, as contained in Johnson's affidavit, is too incredible to be sent to the jury. (2) Alternatively, even if the disputed fact is true, liability should not attach as a matter of law.

■ Dismissal under either theory would occur as a matter of law. While generally a question of fact is properly left to the jury, *Petersen v. State*, 100 Wn.2d 421, 436, 671 P.2d 230 (1983), the guidelines as to what is a question of fact or law are not precise. "Whether the case goes to the jury or the judge dismisses the claim for a failure to make a case for causation may depend on the actors and the circumstances involved." *Herskovits v. Group Health Coop.*, 99 Wn.2d 609, 637, 664 P.2d 474 (1983) (Brachtenbach, J., dissenting). Thus, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963).

For simplicity, however, our analysis is divided on the basis of an issue of fact and issues of law. We discuss first the appropriateness of summary judgment on the basis of the credibility of Johnson's affidavit. (Alternatively analyzed, this affidavit also provides the cause in fact basis for a negligence action against the government agencies and will be referred to in the section on negligence as well.) Secondly, we discuss the questions of law involving tort liability in connection with the HTOA. Because we premise our decision on the failure of legal causation, it is not necessary to address the immunity issues.

## Issue of Fact

Defendants argue the affidavit from Johnson is the only evidence offered to prove the causal connection necessary for a negligence suit, and that it is insufficient to constitute a jury question. In other words, it is not an issue upon which reasonable minds could differ. Summary judgment is appropriate when reasonable minds would find the evi-

dence "too incredible to be believed." *Balise v. Underwood,* at 200. *Accord, Foote v. Grant,* 55 Wn.2d 797, 799, 350 P.2d 870 (1960). They contend that Johnson's record belies the credibility of his statement that he would not have been driving if his license had been revoked. In fact, after receiving a suspended sentence of 10 years' imprisonment for negligent homicide in 1980, Johnson violated the terms of his sentence. His record before the collision also indicates that he had little compunction against driving while intoxicated.

The admissibility of defendants' evidence of Johnson's prior convictions for driving with an invalid license is also at issue. Plaintiffs contend these past offenses are inadmissible under rules of evidence, further buttressing the credibility of Johnson's affidavit. Thus, Johnson's assertion he would not have been driving had his license been revoked would not be subject to attack at trial. ER 404(a) (character evidence). Plaintiffs also cite *Breimon v. General Motors Corp.,* 8 Wn. App. 747, 509 P.2d 398 (1973) for the proposition that prior traffic offenses are inadmissible to impeach a witness.

Questions of admissibility of evidence are properly determined by the trial court in the first instance. ER 104(a). A decision by us would be both premature and unnecessary to our conclusion in this case. Nonetheless, we observe that plaintiffs have misread the law as to the admissibility of Johnson's prior driving record. In *Breimon,* the Court of Appeals properly found that the problem with such evidence is relevancy. The court disallowed the evidence because the only purpose was to discredit the plaintiff and show his past negligence indicated negligence at the time in question. Johnson's speculations about what his conduct might have been is not analogous to the situation in *Breimon.* His past driving record is relevant to establishing his hypothetical state of mind (the primary fact at issue). Its prejudicial effect is questionable since he has already pleaded guilty to negligent homicide. Thus, evidence of Johnson's driving record should be analyzed under ER 402

and ER 403, weighing its probative value against prejudicial effect.

Since the nonmoving party is given the benefit of any factual doubt on a summary judgment motion, it is seldom granted on the basis of the unreasonableness of alleged facts. *See, e.g., Jacobsen v. State, supra; Klinke v. Famous Recipe Fried Chicken, Inc., supra.* Although it may strain credulity, reasonable minds arguably could disagree as to the validity of Johnson's statement. The reasonableness of Johnson's assertion is a proper question for jury determination. Summary judgment on this basis then was properly denied. As we discuss next, however, summary judgment is proper under the laws of negligence, even assuming the truth of Johnson's assertions.

### NEGLIGENCE

Defendants propound several arguments to support their dismissal under tort law of negligence: Johnson's drunk driving was the cause in fact of Mrs. Hartley's death, not the failure of the State or County to revoke his license; Johnson's drunk driving was an intervening cause breaking any causal connection; even if Johnson's assertions were correct, failure to revoke his license is too attenuated to be considered a legal cause of the accident; the public duty doctrine insulates the State and County from liability because the duty owed to Mrs. Hartley is a duty owed to the general public.

In responding to these arguments, we distinguish between cause in fact and legal causation. Negligence, of course, requires duty, breach, and resultant injury; and the breach of duty must also be shown to be a proximate cause of the injury. *Petersen v. State,* 100 Wn.2d 421, 435, 671 P.2d 230 (1983); *LaPlante v. State,* 85 Wn.2d 154, 159, 531 P.2d 299 (1975). Additionally, Washington law recognizes two elements to proximate cause: Cause in fact and legal causation. *Harbeson v. Parke–Davis, Inc.,* 98 Wn.2d 460, 475, 656 P.2d 483 (1983); *Petersen v. State, supra* at 435; *King v. Seattle,* 84 Wn.2d 239, 249, 525 P.2d 228 (1974).

Cause in fact refers to the "but for" consequences of an act—the physical connection between an act and an injury. *King v. Seattle, supra* at 249. "It is a matter of what has in fact occurred." W. Prosser, *Torts* 237 (4th ed. 1971). Some confusion probably has been generated by the imprecise use of the term "proximate cause" to encompass cause in fact and legal causation alone or in combination. For example, in *LaPlante* we affirmed a summary judgment dismissal of defendant for lack of proximate cause without clarifying that it was more precisely characterized as a lack of cause in fact. *See also Petersen v. State,* at 435–36 (recognizing twin elements of proximate cause, but concentrating on cause in fact language, then addressing legal causation (liability) from the standpoint of duty); *Herskovits v. Group Health Coop.,* 99 Wn.2d 609, 619, 664 P.2d 474 (1983). Similarly, Washington Pattern Instruction 15.01 refers to proximate cause in its factual context as "a cause which in a direct sequence, unbroken by any new independent cause, produces the [injury] [event] complained of and without which such [injury] [event] would not have happened." *See King v. Seattle, supra* at 249 (jury instruction relates to cause in fact).

As a determination of what actually occurred, cause in fact is generally left to the jury. As we discussed above, such questions of fact are not appropriately determined on summary judgment unless but one reasonable conclusion is possible. That is, had we found Johnson's affidavit too incredible to present an issue, we could have concluded as a matter of law that there was no cause in fact. Such was our rationale for affirming summary judgment dismissal of the State in *LaPlante.* The evidence in that case was undisputed. It indicated the actor *saw* the approaching automobile and made a faulty judgment. We, therefore, found no "proximate cause" (no cause in fact) because the act of seeing was essential to establishing the State's liability for issuing a license and failing to perform an eye examination. "The State's actions were totally unrelated . . ." and therefore did not constitute cause in fact. *LaPlante v.*

*State,* at 160.

█ Legal causation, on the other hand, rests on policy considerations as to how far the consequences of defendant's acts should extend. It involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on "mixed considerations of logic, common sense, justice, policy, and precedent." *King v. Seattle,* at 250 (quoting 1 T. Street, *Foundations of Legal Liability* 100, 110 (1906)). *See also* Prosser, at 244.

The elements of negligence analysis, however, frequently defy precise demarcation. Professor Prosser has noted the confusion attending judicial attempts to define proximate cause, which he discusses as legal causation, distinct from cause in fact.

> Much of this confusion is due to the fact that no one problem is involved, but a number of different problems, which are not distinguished clearly, and that language appropriate to a discussion of one is carried over to cast a shadow upon the others.

(Footnote omitted.) Prosser, at 236.

Another authority has separated and referred to the twin elements of causation as "physical causation" and "scope of liability", including in the latter the question of extent of duty. Vetri, *Tort Markings: Chief Justice O'Connell's Contributions to Tort Law,* 56 Or. L. Rev. 235, 239–42 (1977).

Similarly, "duty" and "legal causation" are intertwined and linked to policy considerations:

> It is quite possible, and often helpful, to state every question which arises in connection with "proximate cause" [legal causation] in the form of a single question: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? Such a form of statement does not, of course, provide any answer to the question, or solve anything whatever; but it does serve to direct attention to the policy issues which determine the extent of the original obligation and of its continuance, rather than to the mechanical sequence of events which

goes to make up causation in fact. The question becomes particularly helpful in cases where the only issue is in reality one of whether the defendant is under any duty to the plaintiff at all—which is to say, whether he stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for his benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred. Or, again reverting, whether the conduct is the "proximate cause" of the result. The circumlocution is unavoidable, since all of these questions are, in reality, one and the same.

(Footnotes omitted.) Prosser, at 244–45. This court has also noted that the question of "whether liability should attach is essentially another aspect of the policy decision which we confronted in deciding whether the duty exists." *Harbeson v. Parke–Davis, Inc.,* at 476.

Because of the historical imprecision in terminology and the interrelationship of concepts, the rationale in many negligence cases combines aspects of causation, intervening events, duty, foreseeability, reliance, remoteness, and privity. In criticizing the aggregation of multiple elements under a "proximate cause" appellation, an Oregon Associate Justice made these points:

The proximate cause formula combines in one inquiry the question of whether as a matter of policy liability should be imposed in the class of case before the court (the duty issue); the question of whether defendant's conduct was a substantial factor in producing the injury (the actual or physical cause issue free from any idea of culpability); the question of whether there is sufficient evidence of negligence to submit the case to the jury (the usual court function of ruling upon the sufficiency of evidence); the question of negligence, assuming there is sufficient evidence on the issue to warrant submitting it to the jury (the usual function of the jury to apply the foreseeability test and to determine whether defendant failed to exercise reasonable care under the circumstances). Each of these questions must be considered separately if a negligence case is to receive proper judicial treatment. And this is true whether the inquiry as to the defendant's

liability is put in terms of proximate cause or in some other form. I do not say that discarding the proximate cause formula makes it any easier to answer these separate questions. I assert only that the elimination of the formula makes it easier to see the questions which must be answered. But there is less likelihood that the court will confuse its function and the jury's function in setting the limits of a defendant's liability if the term causation is used free from any notions of culpability.

*Dewey v. A.F. Klaveness & Co.*, 233 Or. 515, 526–27, 379 P.2d 560 (1963) (O'Connell, J., specially concurring), *quoted in* Vetri, 56 Or. L. Rev. at 239.

Thus, it may be immaterial whether we analyze the County's and State's liability on the basis of duty or legal causation. Policy considerations and common sense dictate whether the connection of the County and State with the collision is too remote or insubstantial to impose liability. We then determine whether defendants stand "in any such relation to the plaintiff [Mrs. Hartley] as to create any legally recognized obligation of conduct for [her] benefit." Prosser, at 245.

■ Defendants are governmental entities, but in only rare instances does this preclude liability. The Legislature has largely abolished the common law concept of sovereign immunity. RCW 4.92.090 (state); RCW 4.96 (municipal corporations). In our recent opinions articulating the public duty doctrine, we held that RCW 4.96 neither creates any new causes of action nor imposes any new duties. *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 304, 669 P.2d 468 (1983); *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 288, 669 P.2d 451 (1983). To recover in tort against a municipality, as against any other defendant, the plaintiff must show the municipality breached a duty owed to the plaintiff. *J & B Dev. Co.*, at 304; *Chambers–Castanes*, at 284. *See J & B Dev. Co.* and *Chambers–Castanes* (Utter, J., concurring). We have addressed the question of liability on the basis of duty, observing that the government is not liable for breach of a duty owed to all. *J & B Dev. Co. v. King Cy., supra; Chambers–Castanes v. King Cy., supra.* "[T]o

sustain an action against a municipality it is necessary to decide whether a municipality is under a general duty to a nebulous public or whether that duty has focused on the claimant." *J & B Dev. Co.,* at 304. In both of these cases, we found liability.

In *Chambers–Castanes,* we acknowledged that the law may impose "a duty to perform a mandated act for the benefit of particular persons or class of persons". *Chambers–Castanes,* at 285. However, the general obligation to provide police protection does not create tort liability for failure to make an arrest or keep the peace.

> [W]e have consistently held that absent a clear legislative intent or clearly enunciated policy to the contrary, these duties are owed to the public at large and are unenforceable as to individual members of the public.

*Chambers–Castanes,* at 284. The privity and reliance required to move from the general duty (no liability) to the particular (liability attached) were found because of the victim's repeated phone calls and reassurances from the police. *Chambers–Castanes,* at 286.

In *J & B Dev. Co.,* we found establishment of a "special relationship" focused a duty on the plaintiff. *J & B Dev. Co.,* at 307. The county agent had direct contact with the plaintiff developer, had reviewed his plans, and had wrongly issued a building permit.

In two earlier cases, we imposed liability on governmental agencies on the basis of the requirements of local ordinances. *Halvorson v. Dahl,* 89 Wn.2d 673, 574 P.2d 1190 (1978); *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975). In *Halvorson,* plaintiff was the widow of a man who died in a Seattle hotel fire. She sued the City for its failure to enforce housing and building codes, although the City had been aware of the deficiencies for some 6 years. We did not identify a "public duty doctrine" as such in *Halvorson,* but distinguished between a duty owed to the public as a whole and a duty owed to a particular individual. We also recognized that "[l]iability can be founded upon a municipal code if that code by its terms evidences a clear intent to

identify and protect a particular and circumscribed class of persons." *Halvorson,* at 676. Since the housing code in question was aimed at protecting the "occupants" of certain substandard buildings, plaintiff's husband was owed a duty as a member of a specifically identifiable group. Additionally, however, we required "culpable neglect" or "indifference" to violations of the building code. *Halvorson,* at 678.

In *Campbell,* liability hinged on a special relationship between the city agent and the woman killed as a result of his negligent acts. There, the city electrical inspector had examined and knew of the extreme danger of faulty wiring in a creek bed, yet failed to comply with the city ordinance requiring him to shut off power. *See Chambers–Castanes,* 100 Wn.2d at 285–86.

This court has also imposed liability on a government agent for the negligent acts of a third person. *Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983). In *Petersen,* we found liability in the release by a psychiatrist of a mentally ill patient and that patient's negligent driving, which injured another. The court recognized the State's duty "to take reasonable precautions to protect anyone who might foreseeably be endangered . . ." *Petersen,* at 428. Since the State had full control over the patient at Western State Hospital and wrongfully released him, it can be said the State was in a special relationship with the patient which justified imposition of liability.

*Petersen* was premised on our earlier holding in *Kaiser v. Suburban Transp. Sys.,* 65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350 (1965). There, we recognized liability may be imposed on an original actor despite an intervening negligent event. The original actor in *Kaiser* was a doctor who prescribed a sleep inducing drug, allegedly without warning, to a bus driver. The intervening event was the bus driver's failure to take action despite his drowsiness. We held that liability would be dependent upon the foreseeability of the intervening event—a question we remanded for jury determination.

The holdings in *Petersen* and *Kaiser* are distinguishable

from our holding of nonliability for a third party's subsequent negligent acts in *Pratt v. Thomas,* 80 Wn.2d 117, 491 P.2d 1285 (1971). A cause in fact connection could be made in *Pratt;* "but for" leaving keys in a car, the car may not have been stolen. It was not reasonable, however, to assign responsibility to the car owner for the subsequent theft, reckless driving, and resultant accident. The car owner's duty/relationship to the person injured in the accident was simply too attenuated.

In summary, we have premised legal causation (liability) on the existence of some direct contact or special relationship between the defendant and the injured party. *See, e.g., J & B Dev. Co. v. King Cy., supra; Chambers–Castanes v. King Cy., supra; Campbell v. Bellevue, supra.* In the case of an injury caused directly by a third party, we have attributed legal causation on the basis of the relationship between the defendant and the third party. *Petersen v. State, supra; Kaiser v. Suburban Transp. Sys., supra.* In addition, we have recognized legal causation when legislation mandates protection of a "particular and circumscribed class of persons." *Halvorson v. Dahl, supra* at 676.

■ In the case before us, however, neither the State nor County falls within these boundaries of legal causation, even assuming the validity of plaintiffs' factual allegations. Johnson's drunk driving was cause in fact and the legal cause of Mrs. Hartley's tragic death. This is not to say that there cannot be more than one party who is legally liable (*Kaiser v. Suburban Transp. Sys., supra; Mason v. Bitton,* 85 Wn.2d 321, 326, 534 P.2d 1360 (1975); *State v. Jacobsen,* 74 Wn.2d 36, 442 P.2d 629 (1968)); but here the failure of the government to revoke Johnson's license is too remote and insubstantial to impose liability for Johnson's drunk driving.

Johnson clearly was subject to license revocation under the HTOA. Nothing, however, sets Johnson apart from the thousands of other offenders subject to license revocation under the act. No special relationship or privity existed between the government agents and either Johnson or the

victim of his negligence which would impose liability. Johnson was not under the control of government agents who should have known of his dangerous proclivities, as was the case in *Petersen v. State, supra.*

While a license is necessary for anyone wishing to drive an automobile legally in this state, a license does not grant authority to disobey the law. *Spokane v. Carlson,* 73 Wn.2d 76, 84, 436 P.2d 454 (1968); *Rawson v. Department of Licenses,* 15 Wn.2d 364, 371, 130 P.2d 876 (1942). The failure to revoke Johnson's license (even assuming that Johnson would have honored the revocation and not driven) is too attenuated a causal connection to impose liability.

Furthermore, nothing in the HTOA indicates an intent to "protect a particular and circumscribed class of persons" such as to establish governmental liability. *Halvorson v. Dahl, supra* at 676. Although we recognize the intent of the HTOA is to deny the use of the State's highways to drivers who flout the laws, the class of persons thus protected is the public in general. Public policy considerations also dictate against liability in this case. The government would be open to unlimited liability were we to hold potentially liable every decision by a prosecutor or the DOL to delay proceedings.

The motion by the State and County for summary judgment should have been granted on the basis of lack of legal causation; the trial court is reversed.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.