IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TINA MACKAY, a single woman, | ) | |
| | ) | No. 39625-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEMCO MUTUAL INSURANCE | ) | UNPUBLISHED OPINION |
| COMPANY, a Washington Insurance | ) | |
| Company, | ) | |
| | ) | |
| Respondent. | ) | |

COONEY, J. — Shortly after purchasing a homeowner's insurance policy (Policy)

from PEMCO Mutual Insurance Company (PEMCO), a fire ravaged Tina MacKay's

home. Ms. MacKay made a claim under the Policy that was promptly accepted by

PEMCO. A dispute then arose over how sales tax on Ms. MacKay's personal property

was calculated. PEMCO used the actual cash value of the damaged property to calculate

sales tax while Ms. MacKay asserted that sales tax ought to be calculated on the

replacement cost.

Ms. MacKay filed suit against PEMCO asserting claims for breach of contract,

violation of Washington's Insurance Fair Conduct Act, ch. 48.30.010-.015 RCW,

violation of the Consumer Protection Act, ch. 19.86 RCW, bad faith, unjust enrichment,

and declaratory judgment. Thereafter, PEMCO filed a motion for summary judgment, seeking dismissal of Ms. MacKay's claims. The trial court granted PEMCO's motion.

On appeal, we are presented with three questions. First, because the Policy does not define sales tax or explain how sales tax is treated for depreciation purposes, is the Policy's definition of "actual cash value" ambiguous? Secondly, can the Policy be reasonably interpreted to include sales tax on the replacement cost of damaged property when reimbursing the actual cash value of that property? Thirdly, does a Washington State insurance commissioner rule that prohibits the depreciation of the expense of labor impliedly preclude the depreciation of sales tax?

We conclude the Policy's definition of "actual cash value" is not susceptible to more than one reasonable interpretation, that the Policy cannot reasonably be interpreted to include sales tax on the replacement cost of damaged property when calculating the actual cash value, and decline to apply the insurance commissioner's rule prohibiting the depreciation of the expense of labor. Accordingly, we affirm the trial court's order on summary judgment.

BACKGROUND

In June 2017, Ms. MacKay purchased a homeowner's insurance policy from PEMCO. Under "Coverage C − Personal Property" of the Policy, Ms. MacKay was

allowed to recover the replacement cost for any property loss up to $174,300.  Clerk's

Papers (CP) at 118, 131.  In part, the Policy defined "replacement cost" as:

> **b.**  In case of loss to personal property, **replacement cost** means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen.  When the identical article is no longer manufactured or available, **replacement cost** means the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

CP at 123-24.

> Later, the Policy was modified by Homeowners Amendatory Endorsement PM 49.

Under Endorsement PM 49, coverage C was amended to include the following provision:

> **3.  d.**  When the **replacement cost** of the entire loss is more than $1,500, [PEMCO] will pay no more than the **actual cash value** for the loss or damage until the actual repair or replacement is complete, and then no more than the amount actually and necessarily spent to repair or replace.

CP at 145.  The Policy defined "actual cash value" as:

> **1.      Actual Cash Value** means:
> . . . .
> **b.** When the loss or damage to the property creates a total loss, **actual cash value** means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.
> **c.**  Otherwise, **actual cash value** means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

CP at 123.

In the event an insured suffered loss or damage of their property, the Policy provided a two-step process for indemnification. First, for purposes of making an initial actual cash value payment to the insured, PEMCO calculated the actual cash value of the damaged property. The actual cash value was determined by assessing the market value of the property, less a deduction for depreciation, then applying the sales tax rate effective in the insured's zip code. Secondly, if the insured replaced the damaged property, PEMCO would reimburse the difference between the actual cash value of the damaged property and the replacement cost paid by the insured, including sales tax. If an insured chose against replacing a damaged item, the Policy provided that PEMCO would only reimburse the actual cash value of the property.

On April 15, 2018, a fire at Ms. MacKay's home damaged her personal property. Ms. MacKay promptly notified PEMCO of the loss. PEMCO determined the loss was covered by the Policy and issued Ms. MacKay a $5,000 advanced actual cash value payment. Loree Eads, a content inventory specialist with PEMCO, began cataloging the damaged property. Ms. Eads' inventory list included, among other information, the actual cash value of the damaged property, the replacement value of the damaged property, and whether the damaged items were subject to sales tax. When Ms. MacKay replaced an item, Ms. Eads would determine the replacement payment due Ms. MacKay. The replacement payment was the difference between the actual cash value of the

4

damaged item and the cost Ms. MacKay actually paid for the new item, including sales tax on the purchase price.

In her first report, Ms. Eads estimated the replacement cost due Ms. MacKay was $26,063.22. After applying the applicable sales tax of 8.2 percent, totaling $2,137.18, Ms. Eads calculated a total replacement cost of $28,200.40. To assess the actual cash value, Ms. Eads reduced the replacement cost by applying a depreciation to the damaged property. Ms. Eads calculated the actual cash value of the damaged property at $18,948.18. Ms. Eads then added the applicable sales tax rate for a total estimated actual cash value of $20,501.93.

PEMCO made an initial actual cash value payment to Ms. MacKay of $15,501.93. This amount consisted of the actual cash value of the damaged property, $20,501.93, less the $5,000 advanced actual cash value payment. Ms. Eads identified other damaged property not included in the initial actual cash value report. This led to PEMCO issuing a second actual cash value payment to Ms. MacKay of $50,976.18. In 2019, after additional damaged property was identified by Ms. Eads, a third actual cash value payment of $19,074.62 was issued to Ms. MacKay.

On May 17, 2019, Ms. MacKay's home was restored, allowing for her return. PEMCO paid Ms. MacKay $11,774.15 to pack, clean, store, and deliver her personal property from her temporary place of residence to her home. Following these payments,

No. 39625-8-III
*MacKay v. Pemco Mut. Ins. Co.*

PEMCO attempted to contact Ms. MacKay to inquire whether she intended to submit additional claims under coverage C. PEMCO never received a response.

In June 2020, Ms. MacKay filed a lawsuit against PEMCO that alleged PEMCO improperly withheld a portion of sales tax due her by depreciating sales tax when calculating the actual cash value of damaged property. Ms. MacKay asserted claims of breach of contract, violation of Washington's Insurance Fair Conduct Act, chapter 48.30 RCW, violation of the Consumer Protection Act, chapter 19.86 RCW, bad faith, unjust enrichment, and declaratory judgment. Ms. MacKay moved to have the lawsuit certified as a class action and to be appointed as class representative pursuant to CR 23. In November 2021, the court granted the motion for class certification.

Following certification, PEMCO moved for summary judgment, seeking dismissal of all of Ms. MacKay's claims. By way of a letter decision, the trial court granted PEMCO's motion. On March 28, 2023, the trial court entered an order dismissing Ms. MacKay's claims.

Ms. MacKay timely appealed.

ANALYSIS

On appeal, Ms. MacKay contends the Policy's definition of "actual cash value" is ambiguous because it fails to prescribe how sales tax is calculated when assessing the actual cash value of damaged property. Ms. MacKay further asserts that *Holden v.*

6

*Farmers Insurance Co. of Washington*, 169 Wn.2d 750, 239 P.3d 344 (2010), prohibits the depreciation of sales tax. Lastly, Ms. MacKay argues that a recent Washington State insurance commissioner rule that prohibits the depreciation of the expense of labor in standard fire insurance policies infers the depreciation of sales tax should be prohibited as well.

We conclude the Policy's definition of "actual cash value" is not susceptible to more than one reasonable interpretation and is, therefore, not ambiguous, disagree with Ms. MacKay's interpretation of *Holden*, and decline to apply the Washington insurance commissioner's rule.

As a preliminary matter, PEMCO agrees that under the terms of the Policy Ms. MacKay is entitled to payment of sales tax on the actual cash value and the replacement cost of damaged property (provided the damaged property is replaced). Indeed, PEMCO advanced Ms. MacKay the actual cash value of her damaged property, including sales tax. Once Ms. MacKay replaced the damaged property, PEMCO then reimbursed the difference between the actual cash value and replacement cost, including the difference in sales tax. Consequently, the dispute is whether the Policy requires PEMCO to advance Ms. MacKay sales tax based on the replacement cost of damaged property prior to her replacement of the property.

We review orders on summary judgment de novo, engaging in the same inquiry as the trial court. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 370; CR 56(c). The moving party bears the initial burden of establishing that there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

When considering a motion for summary judgment, evidence is considered in a light most favorable to the nonmoving party. *Keck*, 184 Wn.2d at 370. If the moving party satisfies its burden, then the burden shifts to the nonmoving party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-26. While questions of fact typically are left to the trial process, they may be treated as a matter of law if "reasonable minds could reach but one conclusion." *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

Interpretation of an insurance policy is a question of law reviewed de novo. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Insurance policies are construed as contracts, so policy terms are interpreted according to basic contract

principles. *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 665-66, 15 P.3d 115 (2000). We consider the policy as a whole, we give it a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id.* at 666 (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427, 951 P.2d 250 (1998)). If the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). A clause is only considered ambiguous if it is fairly susceptible to two or more reasonable interpretations. *Id.* If an ambiguity exists, the clause is construed in favor of the insured. *Id.* at 172. However, "the expectations of the insured cannot override the plain language of the contract." *Id.* Undefined terms do not automatically create ambiguity. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 284, 313 P.3d 395 (2013).

WHETHER THE POLICY IS AMBIGUOUS AND CAN BE INTERPRETED TO INCLUDE SALES TAX ON THE REPLACEMENT COST OF DAMAGED PROPERTY WHEN REIMBURSING THE ACTUAL CASH VALUE

Ms. MacKay argues *Holden* prohibits an insurer from depreciating sales tax from the replacement cost of damaged property when calculating the actual cash value of the property. We disagree.

Albeit the Policy's definition of "actual cash value" lacks any reference to sales tax, in light of *Holden* the definition is not susceptible to more than one reasonable

9

interpretation. In *Holden*, our Supreme Court addressed whether sales tax should be included in the actual cash value[1] of damaged property when the insurance contract is silent on sales tax. The Supreme Court surmised the average insurance consumer would understand actual cash value to be the replacement cost, or what it would cost to replace an item in the market, less depreciation to reflect the age or wear and tear of the damaged property. 169 Wn.2d at 757. Furthermore, the court reasoned "[s]ales tax represents a portion of the actual out-of-pocket expense to the buyer and bears on the decision to buy." *Id.* at 758. Therefore, the court concluded that since Farmers would occasionally apply sales tax when calculating the replacement cost of damaged property, "actual cash value," as defined in the contract, was ambiguous and should be construed in favor of the insured to include sales tax. *Id.* at 760-61.

Here, although the Policy's definition of "actual cash value" lacks any reference to sales tax, PEMCO agrees that sales tax should be included in the actual cash value of damaged property. Resp't's Br. at 23-24. In light of the court's holding in *Holden* and

---

[1] In *Holden*, the Farmers' contract defined "actual cash value" as "'fair market value' . . . at the time of loss." 169 Wn.2d at 753. While the Farmers' contract did not define fair market value, the court acknowledged in other contexts it recognized fair market value to be "the amount of money which a well informed buyer, willing but not obliged to buy the property, would pay, and which a well informed seller, willing but not obligated to sell it, would accept." *Id*. at 758.

PEMCO's practice of including sales tax in the actual cash value and in the replacement cost of damaged property, the Policy is not ambiguous.

However, differentiable to the issue in *Holden*, Ms. MacKay argues that she is entitled to sales tax calculated on the replacement cost of the damaged property regardless of whether she chooses to replace the property. Because the contract in *Holden* was interpreted to include sales tax in the fair market value of property at the time of loss, the Supreme Court did not consider the inclusion of sales tax a financial windfall to Holden. Rather, application of sales tax to the fair market value of damaged property returned the insured to the same financial position they enjoyed before suffering the loss.

Unlike *Holden*, here, Ms. MacKay would receive a financial windfall if PEMCO was required to pay Ms. MacKay sales tax calculated on the replacement cost of damaged property even if she chooses not to replace the damaged property. Consumers in Washington regularly purchase used items in the marketplace at varying discounts compared to new items, understanding they will pay sales tax on the used price of the item rather than the new price. This is because the amount of sales tax charged for each retail sale is a percentage of, and solely reliant on, the "[retail] selling price" of the item at the time of purchase. RCW 82.08.20(1). As this is the case, we fail to foresee that an insured would expect to receive payment for the sales tax associated with the replacement cost of an item when being indemnified for the actual cash value of that item.

11

Therefore, the Policy cannot be sensibly construed as bifurcating the actual cash value into the replacement cost of the property, and associated sales tax on the replacement cost, and then depreciating the replacement cost to its current value while maintaining the sales tax calculated on the replacement cost. If a consumer entered the marketplace to replace the damaged item with an item in the same or similar condition, the consumer would expect to pay the actual cash value for the item plus the associated sales tax. It is therefore reasonable, when indemnifying an insured for their loss, to calculate sales tax on the actual cash value of the used and depreciated property, not the value of the property when it was new.

Ms. MacKay argues that because the public policy behind insurance indemnity is to "return the insured to the same financial position he or she enjoyed before suffering a property loss," she should be reimbursed for the sales tax she paid when she originally purchased the property. *Holden*, 169 Wn.2d at 761. Ms. MacKay's argument is premised on the assumption that she paid sales tax when the item was purchased. Assuming Ms. MacKay paid sales tax at the time of purchase, sales tax rates vary over time and location. Any attempt to estimate the amount of sales tax Ms. MacKay may have paid when purchasing the now-damaged property would be grounded in assumptions and speculation.

DEPRECIATION OF SALES TAX

Ms. MacKay next claims that sales tax is not subject to depreciation. As an initial matter, the record fails to show that PEMCO depreciated sales tax. Rather, PEMCO depreciated the value of the damaged property and then applied the sales tax rate for Ms. MacKay's zip code.

Importantly, "depreciation" applies to a new market item comparable "less reasonable deduction for wear and tear, deterioration and obsolescence." CP at 123. Once a consumer purchases an item in the retail market and pays sales tax, the tax belongs to the taxing authority. The taxing authority can, over and over, *ad infinitum*, collect sales tax on the same item if it is sold at retail. However, the consumer may not recover the sales tax if later the consumer decides to sell or trade the item to recoup their money. Under the Policy, PEMCO is initially indemnifying the insured against the actual cash value of the property at the time of loss, including the associated sales tax. PEMCO is not indemnifying the insured against some amount of sales tax the insured paid at some time in the past.

Furthermore, when calculating the actual cash value of an item, the same value may be reached by either adding the replacement cost and associated sales tax before applying depreciation or by applying depreciation to the replacement cost and then adding sales tax. As recognized in *Holden*, "sales tax is simply included in calculating

13

the replacement cost of the damaged property before subtracting for depreciation, *which is one way* to estimate the property's current value." 169 Wn.2d at 759 (emphasis added). Therefore, characterizing the sales tax as having been "depreciated" in the context of calculating actual cash value is a mischaracterization. The sales tax rate is simply pegged to the cost of an item purchased in the retail marketplace.

WASHINGTON STATE INSURANCE COMMISSIONER'S RULE

Ms. MacKay contends that because the Washington Office of the Insurance Commissioner has ruled that depreciation of the expense of labor in standard fire insurance policies is not subject to depreciation, an inference can be made that depreciation of sales tax should be treated in kind. We disagree.

Chapter 284-20 WAC regulates insurance policies. WAC 284-20-010(4) provides, "the expense of labor necessary to repair, rebuild, or replace covered property is not a component of physical depreciation and may not be subject to depreciation or betterment." The Washington Office of the Insurance Commissioner's stated reason for prohibiting the depreciation of labor is that:

> The practice of depreciating labor costs on insurance payments for property damage claims floats a significant part of the labor repair costs to the consumer and their repair contractor, unfairly shifting a burden to the consumer during the repair process and likely against the principle of indemnity.

CP at 335.

14

Sales tax is calculated as a percentage of the retail selling price of an item. RCW 82.08.20(1). Therefore, the assertion that sales tax cannot be depreciated mischaracterizes how sales tax is calculated. Labor, on the other hand, is not necessarily fixed in any manner to the retail price of an item. For example, it would be possible for a consumer to hire a contractor to build a shed utilizing either new or used materials. The new materials would presumably be more expensive than the used materials. The reduced price of used materials would result from factoring in some depreciation. The sales tax on the materials would be reflective of the respective retail purchase prices, new or used. Nevertheless, the labor cost would remain unaffected by the utilization of either new or used materials. Taking this scenario a step further, materials acquired for free would not include any sales tax while the labor to build the shed would remain the same. Thus, there is no relationship to be inferred between sales tax and labor with respect to depreciation.

Notably, if the Washington State insurance commissioner had concerns about sales tax being calculated on the actual cash value of an item posing a significant hardship on consumers, they could adopt regulations similar to those applicable to the expense of labor. The expense of labor, with respect to reconstruction after a loss, is a significant part of the cost of replacing an insured's property, whereas sales tax is not.

15

No. 39625-8-III
*MacKay v. Pemco Mut. Ins. Co.*


We refrain from applying to the facts before us the insurance commissioner's rule prohibiting the depreciation of the expense of labor.

CONCLUSION

We conclude the Policy's definition of "actual cash value" is not susceptible to more than one reasonable interpretation and cannot reasonably be interpreted to include sales tax on the replacement cost of damaged property when calculating the actual cash value. Further, we decline to apply the insurance commissioner's rule prohibiting the depreciation of the expense of labor. We affirm the trial court's order on summary judgment.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____          _____
Pennell, J.                                       Staab, A.C.J.

16