[No. 53367-3-I.   Division One.   February 22, 2005.]

DANAE CLAAR ET AL., *Appellants*, v. AUBURN SCHOOL DISTRICT
NO. 408 ET AL., *Respondents*.

898

*Lafcadio H. Darling* and *Bradley G. Davis* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, P.L.L.C.*), for appellants.

*Jerret E. Sale* and *Deborah L. Carstens* (of *Bullivant Houser Bailey, P.C.*), for respondent Auburn School District No. 408.

*David D. Mordekhov* and *Gary A. Trabolsi* (of *Gardner Bond Trabolsi St. Louis & Clement, P.L.L.C.*), for respondents Mohoric.

¶1 GROSSE, J. — Washington law recognizes two elements of proximate cause: cause in fact and legal causation. Here legal causation is absent.

## FACTS

¶2 In September 2000, Linda Johnson was driving her normal afternoon bus route, dropping students off after school. Sisters Danae and Sanna Claar, ages 13 and 16 respectively, were on her bus. That afternoon Johnson overshot the Claars' normal afternoon bus stop. The exact point at which the Claars were dropped off was anywhere from 20 to 100 feet past their typical stop. It is undisputed that the Claars were dropped off closer to their driveway than normal and on the same side of the street as their house.

¶3 After dropping the Claars off, Johnson proceeded a short distance to the three-way intersection of Lake Moneysmith Road and Lake Holm Road. Intending to turn left onto Lake Holm Road, Johnson stopped and waited at the intersection to allow an approaching pickup truck to pass by in the opposite direction. The truck was driven by Connie Mohoric. Mohoric knew Johnson and briefly waved at her as she approached the bus.

¶4 In the meantime, Danae Claar had walked a brief distance alongside the bus as it had pulled away. After the bus had passed by and was stopping at the intersection, Claar started walking across the street behind the bus to her mailbox where she had hoped to find birthday cards. The Claars' mailbox is located across the street from their home. It is undisputed that Johnson had no knowledge that Claar intended to cross the street to check the mail after she was dropped off. As Claar emerged from behind the bus, Mohoric's vehicle struck her, severely injuring Claar.

¶5 The police investigated the incident and estimated Mohoric's speed as between 37 and 39 miles per hour. The posted speed for the road was 40 miles per hour. The police did not cite Mohoric but considered infraction charges against Claar. The juvenile prosecutors office declined to file charges.

¶6 Claar sued Mohoric, the Auburn School District, and Johnson for negligence. Claar claimed Mohoric was inat-

tentive and was not traveling at a safe speed under the circumstances. Claar blamed Johnson for failing to properly monitor her after she exited the bus and for dropping her off at a location other than her typical stop. Furthermore, she claimed the Auburn School District was vicariously liable for failing to properly train and supervise Johnson and negligent for failing to properly designate a stop for Claar.

¶7 Mohoric, Johnson, and the Auburn School District filed motions for summary judgment. In response, Claar submitted expert testimony indicating through a series of mathematical calculations that the incident would not have occurred if Claar had been dropped off at her typical stop. The expert also estimated that Mohoric was traveling between 38 to 46 miles per hour and that the incident would not have occurred had Mohoric had been driving 36 miles per hour or less when she first saw the bus, or had been traveling at 26.9 miles per hour or less when she first saw Claar in the road. The superior court granted the motions for summary judgment and Claar appeals.

## ANALYSIS

*Mohoric*

¶8 Speeding cannot be said to have proximately caused a collision if the speeding car was where it was entitled to be and the driver would not have had sufficient time to avoid the collision even if driving at the lawful speed.[1] Claar claims that Mohoric's speed proximately caused the collision. Here, the police estimated Mohoric's speed as between 37 and 39 miles per hour prior to the collision and Claar's expert estimated that Mohoric was traveling between 38 to 46 miles per hour prior to striking Claar.[2] The posted speed limit was 40 miles per hour. Reading the evidence in the light most favorable to Claar,

---

[1] *Theonnes v. Hazen*, 37 Wn. App. 644, 646, 681 P.2d 1284 (1984).

[2] Clerk's Papers (CP) 58, 68.

Mohoric was traveling in excess of the speed limit prior to striking Claar.

■ ■ ¶9 However, Claar's own expert testified that if Mohoric was traveling at the speed limit, the accident still would have occurred.[3] Thus, Mohoric's speed could not have proximately caused the collision unless it is found that she had a duty to drive well below the speed limit when she first saw the bus. According to Claar's expert, Mohoric would have had to have slowed to 36 miles per hour when first seeing the bus in order to have had enough time to avoid hitting Claar.[4]

¶10 No such duty arises in a case such as this, where the bus did not have its flashers on, Mohoric could not see the children behind the bus, and Mohoric had no reason to believe that Claar was behind the bus crossing the street. In fact, Washington courts have consistently refused to impose liability on drivers who have hit children who had darted onto the roadway from behind obstructions.[5] This case is analogous to those cases. It is not like the cases Claar cites, where the court found that the jury could determine that the children had been in plain view and that the drivers could have seen them if they had been more vigilant.[6] There is no evidence in the record that could lead a jury to conclude that Claar was in plain view and Mohoric could have seen her if she had been more vigilant.

¶11 Claar's allegation that Mohoric's inattentiveness proximately caused the collision is unsupported by any evidence in the record. While there is an issue of fact as to

---

[3] CP at 355.

[4] CP at 299.

[5] *Haydon v. Bay City Fuel Co.*, 167 Wash. 212, 9 P.2d 98 (1932); *Femling v. Star Publ'g Co.*, 195 Wash. 395, 84 P.2d 1008 (1938); *Burns v. Harfst*, 42 Wn.2d 795, 259 P.2d 379 (1953); *Ellefsen v. Wilt*, 36 Wn.2d 56, 217 P.2d 318 (1950).

[6] *Nagala v. Warsing*, 36 Wn.2d 615, 625-26, 219 P.2d 603 (1950); *Johnson v. Barnes*, 55 Wn.2d 785, 787, 350 P.2d 471 (1960).

when Mohoric *actually saw* Claar,[7] there is no evidence substantiating when Mohoric *could have seen* Claar emerge from behind the bus. The only evidence on the subject is Mohoric's own testimony that she did not see Claar when she returned her attention to the road.[8] Without any evidence to establish when Claar became visible, it is mere speculation that Mohoric's brief wave to Johnson proximately caused the collision.

*Auburn School District and Linda Johnson*

¶12 Claar faults Auburn School District for failing to properly designate a bus stop for Claar, and Linda Johnson for (1) failing to drop Claar off at her normal bus stop, and (2) failing to make sure that Danae Claar had "cleared" the bus before proceeding.

■ ¶13 Washington law recognizes two elements to proximate cause: cause in fact and legal causation.[9] "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury."[10] "Legal causation, on the other hand, rests on policy considerations as to how far the consequences of defendant's acts should extend."[11] "[D]etermination of legal liability will be dependant on 'mixed considerations of logic, common sense, justice, policy, and precedent.' "[12]

■ ■ ¶14 Claar's drop off location cannot be said to have proximately caused the collision. While Claar has gone to great mathematical and scientific lengths to show that the collision would not have occurred if she had been dropped off at her typical stop, she fails to show why this

---

[7] Mohoric claims she never saw Claar until after she collided with her. Claar's expert testified that based on the skid marks on the road, Mohoric actually saw Claar 110 feet before impact.

[8] CP at 40.

[9] *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985).

[10] *Hartley*, 103 Wn.2d at 778.

[11] *Hartley*, 103 Wn.2d at 779.

[12] *Hartley*, 103 Wn.2d at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).

cause in fact supports a finding of legal causation. The only evidence in the record regarding the safety of her drop off point comes though a defense expert who testified that any point between her typical stop and her driveway would have been safe.[13] This is not surprising considering the fact that she was dropped off on the *same side of the street as her home* and, on the date in question, *closer* to her home than usual. The only proof Claar offers as to the danger of the drop off point is evidence of the accident itself. Proof that an accident occurred is not by itself proof of negligence.[14]

■ ¶15 Furthermore, Johnson did not violate any legal duty towards Claar. The rules governing school bus drivers state:

> School bus drivers shall have the primary responsibility for the safety of passengers while they are boarding the bus, while they are on the bus, and while they are disembarking the bus and crossing the roadway. If passengers *must* cross the road, the driver shall take reasonable action to assure that they cross safely. The driver shall take reasonable action to assure that passengers boarding or disembarking from the bus are within his/her view at all times and that they pass in front of the bus and never behind the bus.[15]

Claar did not need to cross the street to get to her home. Johnson was unaware of Claar's intention to cross the street to check the mailbox and thus cannot be held liable for her failure to make sure Claar crossed the street safely after she had dropped Claar off and pulled away.

■ ¶16 Likewise, Johnson did not violate a duty to make sure that Claar had "cleared" the bus. Claar makes an issue of Johnson's alleged failure to check and recheck her mirrors as if this would have revealed Claar's intention to cross the street behind the bus and allowed Johnson to do something to avoid the accident. However, the undisputed evidence indicates that after Johnson dropped the Claars

---

[13] CP at 441-42.

[14] *Haydon*, 167 Wn. at 213.

[15] WAC 392-145-020(4) (emphasis added).

off, the Claars walked alongside the bus towards their house as it pulled away.[16] They were not lingering behind the bus and Danae Claar did not begin to cross the street until after the bus had pulled away and was either coming to a stop or stopped at the intersection in front of her home.[17] Johnson's duty towards Claar does not extend as far as Claar wants it to under these circumstances.

¶17 The superior court's summary judgment orders favoring Mohoric, Johnson, and the Auburn School District are affirmed.

BAKER and AGID, JJ., concur.

---

[16] CP at 96 (Linda Johnson: "I dropped—after I dropped them off and pulled back into the traffic—or—yeah, they were both there. They were walking alongside my bus."). CP at 50 (Sanna Claar: "Q: So you and your sister got off the bus, and I think you testified that you don't recall who got off first, but eventually the two of you started walking along the shoulder towards your driveway; is that fair? A: That's right.").

[17] CP at 52 (Sanna Claar: "Q: When Danae crossed the road, was the bus still moving? A: No I don't believe so. Q: It was stopped? A: I can't remember if, you know, the first couple of steps she took, if it was rolling to a stop but it was not like any speed moving. Like, it was probably stopped the whole time, but I can't—didn't have my eye on her and bus that day.").