**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 4, 2021

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 4, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BONNIE I. MEYERS, as personal representative of the estate of GABRIEL LEWIS ANDERSON, a deceased minor, age 15, and on behalf of the beneficiaries of the estate; and BRANDI K. SESTROM and JOSHUA ANDERSON, individually, | ) ) ) ) ) ) ) ) | No. 98280-5 |
| Respondents, | ) ) | En Banc |
| v. | ) ) | |
| FERNDALE SCHOOL DISTRICT, a political subdivision of the State of Washington, | ) ) ) ) ) | |
| Petitioner, | ) ) | |
| and | ) ) | |
| WILLIAM KLEIN and JANE DOE KLEIN, and the marital community comprised thereof, | ) ) ) ) | |
| Defendants. | ) ) | Filed: March 4, 2021 |

JOHNSON, J.—This case involves a wrongful death claim brought on behalf of a student against the school district. Gabriel Anderson, a student of the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

Ferndale School District (Ferndale), was killed by a vehicle while on an off campus walk with his physical education (PE) class. Anderson's estate alleged negligence by Ferndale. The trial court dismissed the claim, granting Ferndale summary judgment based on a lack of duty. The Court of Appeals reversed, determining that there were sufficient factual issues on duty and proximate causation. Ferndale challenges the Court of Appeals' analysis of proximate cause. We are asked to decide whether Ferndale is entitled to summary judgment dismissal based on proximate causation. While the Court of Appeals erred in analyzing legal causation, it properly concluded that material issues of fact exist concerning proximate causation. We affirm the Court of Appeals' decision to reverse summary judgment dismissal of the negligence claim against Ferndale. *Meyers v. Ferndale Sch. Dist.*, 12 Wn. App. 2d 254, 457 P.3d 483, *review granted*, 195 Wn.2d 1023 (2020).

FACTS

Anderson was a student at Windward High School, which is part of the Ferndale School District. On June 10, 2015, Evan Ritchie, the PE teacher, decided to take his class on an off campus walk along West Smith Road. Before the PE walk, Ritchie explained the basic logistics to his students, including the route and which side of the road to walk on. The class was composed of approximately 25 students. Anderson was part of this class.

2

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

The students walked along the raised sidewalk on the north side of West Smith Road. The sidewalk was separated from traffic by a fog line and eight-foot shoulders. The group reached the end of the sidewalk, turned around, and proceeded back to school. They crossed the street to the south side of West Smith Road. The group did not cross at a marked crosswalk. On this side of the road, the group had their backs to oncoming traffic. Ritchie was positioned at the back of the group in a "sweep" position. 1 Clerk's Papers (CP) at 16. Students were spread apart, as far as 200 meters away from Ritchie. Ritchie was walking beside Anderson as they approached the intersection of Graveline Road.

A vehicle traveling eastbound on West Smith Road left the roadway and crossed onto the sidewalk. The driver, William Klein, had evidently fallen asleep at the wheel, lost control of his vehicle, and within approximately one second of leaving the roadway, struck Anderson and three other students. Tragically, Anderson and one other student died on impact. Two other students were severely injured.

Windward High School is a small choice school located along West Smith Road. West Smith Road is a two-lane roadway with varying speed limits. The section where the accident occurred had a 40 m.p.h. speed limit. The campus was a former elementary school with limited athletic facilities, which included a small track and field. Due to the facility limitations, Ritchie sometimes took his PE

3

classes on off campus walks as part of the regular curriculum. He used the same route taken on June 10 approximately 30 times before. The walks generally took 30-40 minutes and were not usually planned in advance. The principal, Tim Kiegley, confirmed that Ritchie had asked him for permission to take students on these walks before, and they had discussed general safety and the appropriate route. The parties dispute whether Kiegley had notice of the walk on that particular day.

Ferndale has two policies regarding off campus field trips and excursions: "Policy No. 2320" and "Policy No. 2320 P-1." Policy No. 2320, titled "Field Trips, Excursions and Outdoor Education," recognizes that "[t]he superintendent will develop procedures for the operation of a field trip or an outdoor education activity which will ensure that the safety of the student is protected and that parent permission is obtained before the student leaves the school." 1 CP at 317. Ferndale policy does not provide a definition for "field trip." The corresponding Policy No. 2320 P-1 provides specific procedures for field trips. Teachers must request permission from the principal at least a month prior to the event, send parents a notice and permission form, arrange transportation, make plans to keep the group together, and provide a list of participating students and chaperones. Once the teacher completes these tasks, the principal must review and provide approval at least three weeks before the event and ensure that parents are notified and

4

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

permission slips are submitted. Ritchie and Kiegley did not consider these off campus walks as field trips. As a result, they did not follow these procedures, nor did they notify or obtain permission from parents or guardians.

The wrongful death claim was filed by the personal representative of Anderson's estate, Bonnie Meyers, alleging negligence by Klein and Ferndale.[1] Ferndale moved for summary judgment, arguing that Anderson's death was not foreseeable and that Meyers could not establish proximate cause. The trial court considered declarations and reports submitted by both parties, including declarations and deposition testimony from Ritchie, Kiegley, Meyers, accident reconstruction experts, former Ferndale teachers, and former school district officials. The trial court granted Ferndale's motion and dismissed the claims. The trial court concluded that under these facts, the accident was simply unforeseeable and, as such, did not fall within Ferndale's duty to its students. The trial court did not reach proximate causation.

Meyers appealed. The Court of Appeals reversed and remanded for trial, holding that there were questions of fact for the jury on both duty and proximate cause. On duty, the court determined that there was a question of fact as to whether Anderson's death was reasonably foreseeable. Additionally, the Court of Appeals

---

[1] Any civil claim against Klein is not before us.

5

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

analyzed the issue of proximate cause. The Court of Appeals found genuine issues of material fact and rejected the argument that Ferndale was not the legal cause of Anderson's injuries and subsequent death. Ferndale petitioned for discretionary review solely on the proximate cause issue.[2]

## ANALYSIS

We review an order granting summary judgment de novo. *Lowman v. Wilbur*, 178 Wn.2d 165, 168, 309 P.3d 387 (2013). Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law. We view the facts and reasonable inferences in the light most favorable to the nonmoving party. *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794, 64 P.3d 22 (2003).

To prevail in this negligence claim, Meyers "'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 429, 378 P.3d 162 (2016) (quoting *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). To prevail on summary judgment, Ferndale must establish that viewing the facts and inferences in the light most favorable to Meyers, Meyers fails to demonstrate a genuine issue of material fact as to Ferndale's negligence.

---

[2] Washington State Association for Justice Foundation filed an amicus brief in support of Meyers.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

In the briefing filed in this court, the parties do not dispute that a genuine issue of material fact exists as to duty and, instead, focus the arguments primarily on proximate causation.[3] Although duty is a separate inquiry, some brief background on duty remains useful here because the duty analysis informs the proximate cause analysis.

The analysis in *Hendrickson v. Moses Lake School District*, 192 Wn.2d 269, 276-77, 428 P.3d 1197 (2018), is helpful in resolving the issue here. In *Hendrickson*, we analyzed that school districts owe a unique duty of care based on the custodial and involuntary nature of their relationship with students. Teachers are effectively substituted for parents when students are in the custody of the school because students are involuntarily subject to school rules, discipline, direction, and activities. We compared the duty of care for parties with special relationships and those without special relationships as set out in sections 314 and 314A of the *Restatement (Second) of Torts* (Am. Law Inst. 1965). Section 314 describes that most parties operate in a limited pool of risk and are required to take affirmative action to protect only from harm that is within their direct control. Whereas, based on the special relationship duty described in section 314A, school districts have a duty to protect students from foreseeable harm, even harm caused

_____

[3] "Ferndale does not challenge the Court of Appeal[s'] analysis of the duty owed." Pet. for Review at 9.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

by third parties. In doing so, schools enter a larger pool of risk and must anticipate and take affirmative action to protect students while in school custody.

Generally, school districts have a duty "to anticipate dangers which may reasonably be anticipated, and to then take precautions to protect" students from such dangers. *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 320, 255 P.2d 360 (1953). In the instance where the harm stems from an intervening act of a third person, a school may still be considered negligent where the intervening act is reasonably foreseeable. Regarding foreseeability,

> [w]hether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated.

*McLeod*, 42 Wn.2d at 321.

In this case, the parties dispute certain facts, such as whether the formal field trip policy applied and was followed, whether parental permission was required, and whether proper safeguards were taken, including using a reflective vest and having students cross at designated crosswalks, walk facing traffic, or walk closer together. There is also a factual dispute as to whether a vehicular accident that occurred while students were on an off campus walk alongside the road fell within a general field of danger that should have been anticipated.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Meyers presented reports and declarations that car accidents occur in any number of ways, including where drivers fall asleep at the wheel, text, speed, or are intoxicated. Regardless of the specific cause of the accident, generally, pedestrian-vehicular accidents are frequent occurrences. Ritchie recognized in his deposition that an inherent risk exists that vehicles could stray from the roadway and onto sidewalks. Other experts pointed out in their declarations and reports that the harm of a vehicle hitting a pedestrian on a sidewalk was a reasonably foreseeable danger of taking students off campus near a roadway. As the Court of Appeals correctly concluded, viewing the facts in the light most favorable to Meyers, whether the harm in this case was within the applicable duty is a question for the jury.

Even assuming that duty exists, the parties dispute the Court of Appeals' analysis of proximate causation. Proximate cause is generally a fact question for the jury, but if reasonable minds could not differ, these factual questions may be determined as a matter of law. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Proximate cause is composed of both cause in fact and legal cause. While the cause in fact inquiry focuses on a "but for" connection, legal cause is grounded in policy determinations as to how far the consequences of a defendant's acts should extend. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Ferndale argues that as a matter of law, Meyers cannot establish that any alleged breach was the cause in fact of Anderson's death. We disagree. Cause in fact refers to the "'but for' consequences of an act—the physical connection between an act and an injury." *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985). Cause in fact is generally left for the jury, and it determines what actually occurred.

We discussed the issue of cause in fact in *N.L.* and determined whether the plaintiff produced sufficient evidence of cause in fact to overcome summary judgment. In that case, N.L. sued the school district for failing to notify teachers, coaches, and staff that an older student, who mentored younger students on the track team, was a known sex offender. We determined that a cause in fact question existed for the jury, reasoning that had the track coach been informed by school officials that the student was a registered sex offender, the coach could have taken reasonable steps to keep that student away from younger students. That is, where the alleged evidence supported that preventative steps could have been taken if the district fulfilled its duty, the matter should be left for the jury. *N.L.*, 186 Wn.2d at 437-39.

Here, the Court of Appeals below similarly determined that a question for the jury exists as to whether the alleged breach was the cause in fact of Anderson's death. In sum, Ferndale and Meyers presented conflicting views in the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

declarations, deposition testimony, and expert reports as to whether any reasonable actions by Ferndale could have prevented the accident. Ferndale presented expert opinions that concluded that even if additional precautions were taken, the accident could not have been avoided and there was nothing unsafe about the walk. Their expert also concluded that this activity did not require compliance with Policy No. 2320 and that the school took adequate safeguards. Meyers presented contrary declaration and deposition testimony supporting that if Ferndale had abided by Policy No. 2320 and employed additional safeguards, Anderson's death could have been prevented because he would not have been on the off campus walk or, at the very least, would have been at a safer location, facing traffic while walking on the sidewalk. Based on the disputed assertions and viewing the facts in the light most favorable to the nonmoving party, Meyers presented sufficient evidence to survive summary judgment by establishing a factual question as to whether Ferndale's act of taking the students off campus led to the accident.

Turning to the issue of legal cause, Ferndale asserts that the Court of Appeals improperly conflated the duty and legal cause inquiries and failed to conduct an independent analysis of legal cause. We agree with Ferndale that in its analysis, the Court of Appeals erroneously conflated the duty inquiry with the legal cause inquiry. Its analysis seemingly concluded that the establishment of duty also satisfies legal causation. This is incorrect. While the issues of duty and legal cause

often involve similar considerations, they are separate inquiries. Even where "all the other elements of tort liability are present, . . . [t]he court still must adduce from the record whether, as a policy of law, legal liability should attach." *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974). In *Schooley*, the Court of Appeals similarly erred by concluding that legal causation was automatically satisfied by the existence of duty. We clarified that

> the issues regarding whether duty and legal causation exist are intertwined. This is so because some of the policy considerations analyzed in answering the question whether a duty is owed to the plaintiff are also analyzed when determining whether the breach of the duty was the legal cause of the injury in question. However, a court should not conclude that the existence of a duty automatically satisfies the requirement of legal causation. This would nullify the legal causation element and along with it decades of tort law. Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise.
>       . . . .
>       . . . [I]t is apparent that in some cases the policy considerations involved in determining whether a duty is owed to the plaintiff will be revisited in deciding whether legal causation is established. However, this does not mean that once a court finds a duty exists it need not analyze legal causation or that the result will automatically be the same. Thus, legal causation should not be assumed to exist every time a duty of care has been established.

*Schooley*, 134 Wn.2d at 479-80 (internal citations omitted).

This distinction was reflected further in the legal cause analysis. The issue in *Schooley* was whether an alcohol vendor, who sold alcohol to minors, should be liable for injuries to a minor who consumed the alcohol but did not directly

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

purchase it. After determining that factual questions existed as to duty, we began

our analysis of legal cause by revisiting the overarching policy reasons for

imposing a duty on alcohol vendors, which were rooted in protecting the health

and safety of minors. We next discussed the broader policy concern of whether

imposing liability would result in unlimited liability for vendors. We determined

that liability was not so broad and could be limited by the doctrines of contributory

negligence, foreseeability, and superseding causes. Ultimately, we held that the

injury to the minor plaintiff was not too remote as to preclude vendor liability as a

matter of law where the underlying principle was to protect minor purchasers and

consumers. We left that determination for the jury. *Schooley*, 134 Wn.2d at 483.

Similarly, in *Lowman*, we again considered the interrelationship between

duty and legal cause in reviewing a summary judgment determination where the

parties had stipulated to all the other elements of negligence except legal cause. In

that case, we began the discussion of legal cause with a review of the duty

question, which we had established in an earlier case, *Keller v. City of Spokane*,

146 Wn.2d 237, 44 P.3d 845 (2002). *Keller* held that municipalities had a duty to

protect against negligent and reckless drivers but not against extremely negligent

or criminally reckless drivers, so municipality liability was not unlimited. Like in

*Schooley*, we reasoned that there was "no rationale to negate the sound policy

13

preference expressed in *Keller* for holding municipalities [liable]" for harm resulting from negligent drivers. *Lowman*, 178 Wn.2d at 172.

While the Court of Appeals here erred by concluding that the existence of a factual dispute as to duty also resolved the issue of legal causation, the proper analysis leads to the same result. Legal cause is determined by utilizing """"mixed considerations of logic, common sense, justice, policy, and precedent."""" *Schooley*, 134 Wn.2d at 479 (quoting *King*, 84 Wn.2d at 250 (quoting 1 THOMAS ATKINS STREET, FOUNDATIONS OF LEGAL LIABILITY 110 (1906))). The question becomes whether as a matter of policy the connection between the ultimate result and the act or omission of the defendant is too remote or insubstantial to impose liability. The underlying policy considerations relevant to *duty*, including foreseeability, are the starting points of the legal cause analysis. Beyond that, the legal cause inquiry includes broader policy considerations.

In this case, the legal cause analysis includes the underlying policy considerations for imposing liability. Given the special relationship existing between schools and students, school districts have a duty to protect their students from reasonably anticipated dangers.

We recently discussed these principles and the relation between duty and legal causation in *N.L.* In that case, we concluded that there was a question of fact as to whether the intervening acts, the students leaving campus and the criminal act

of rape, were reasonably foreseeable and held that the issue of proximate cause remained for the jury. When discussing and engaging in a separate analysis of legal causation, we broadened our consideration beyond foreseeability and discussed the underlying policy, which included, in that case, a specific responsibility to provide information to protect the public and counteract the potential danger posed by sex offenders. In light of that underlying policy and the custodial nature of the relationship between school districts and their students, we could not conclude as a matter of law that the district's failure to take any preventative action after being notified of a student's prior sex offense was not a legal cause of the plaintiff's injury. *N.L.*, 186 Wn.2d at 438-39. We left the issue of proximate cause for the jury to resolve.[4]

Our holding in *McLeod* similarly recognized that in the context of summary judgment, where factual questions existed regarding foreseeability, proximate causation was also a matter for the jury. We determined that the custodial relationship between schools and students extends potential liability to the school where the injury involves a foreseeable intervening act of a third person. There, the plaintiff sued the school district and alleged that the school was negligent for

---

[4] The verdict issued in *Hendrickson* further exemplified that regardless of the other negligence elements, proximate cause may be resolved by the jury. *Hendrickson*, 192 Wn.2d at 274. That case concerned a student who was injured while using a saw in a woodshop class. While the scope of duty and causation overlapped, the jury ultimately found no school district liability due to a lack of proximate cause, despite finding the other elements of negligence satisfied. We upheld that jury verdict.

15

failing to lock and supervise a room in the school gymnasium where she was raped by other students. We determined that a factual question existed as to whether the intervening, criminal acts of the other students were reasonably foreseeable by the school. We noted that if the harm is one of the particular risks that made the defendant's conduct negligent, it is obviously a consequence for which the defendant must be held legally responsible and it is not for the court to say that such negligence could not be a proximate cause. In that case, we concluded that the alleged negligence of failing to anticipate and guard against the danger of a dark, unsupervised room was not too remote as matter of law to establish legal cause. *McLeod*, 42 Wn.2d at 324-25.

Ferndale relies on *Channel v. Mills*, 77 Wn. App. 268, 277, 890 P.2d 535 (1995), for the proposition that a negligent act cannot be the proximate cause of a harm where that act merely brings the plaintiff to the wrong place at the wrong time. That case involved a vehicle collision at an intersection, where the defendant was speeding and the plaintiff ran a red light. The Court of Appeals in *Channel* considered whether specific evidence about the defendant's speed was relevant to proximate cause; the evidence supported the argument that if the defendant were not speeding, the cars would have cleared each other in the intersection. The Court of Appeals recognized however that excessive speed may establish cause in fact, even where the speed merely placed the drivers at the location of the accident. The

16

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

court also held that excessive speed may satisfy legal cause where the evidence also establishes that but for the speeding, the defendant would have been able to avoid the accident by other means, such as swerving or braking. The court upheld the exclusion of the speeding evidence because it did not establish that the accident could have been avoided, which would have supported legal cause. The *Channel* holding is distinguishable because the evidence was offered to explain the fortuity of two vehicles meeting at an intersection and was based on the unique characteristics of speeding. Ferndale's reliance on *Channel* is misplaced where, here, Meyer asserts that Ferndale's specific act of taking students on an off campus walk without complying with internal policies, without parental permission, and allegedly without adequate safety precautions legally caused the death of a student.

In sum, our cases establish a policy based on the special relationship where school districts may be liable for harms suffered by students even where the harm occurs off campus and is caused by the act of a third party. This flows from the custodial relationship and responsibility between schools and students. Since students are involuntarily subject to the school's control, schools must take affirmative steps to protect students even against reasonably foreseeable acts of third parties.

Ferndale essentially argues that liability in this instance would subject school districts to nearly unlimited liability. We rejected a similar argument in

17

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

*Schooley*, where the defendant's policy argument in support of no legal cause was the fear of unlimited liability. 134 Wn.2d at 480-81. In *Schooley*, we held that the duty of an alcohol vendor was not so onerous and that fulfillment of that duty was within the vendor's own control. We emphasized that the vendor is absolved from liability where it simply satisfies its duty of care. Further, in that case, we reasoned that other legal concepts limit liability as well, such as foreseeability, contributory negligence, and superseding causes.

Similarly, we reject Ferndale's argument that we should resolve proximate cause based on the fear of unlimited liability. Ferndale posits that commonplace school practices that subject students to any risk would cease because of potential liability concerns, activities such as field trips, transportation by school bus, woodshop classes, and chemistry experiments. But Ferndale fails to recognize that school districts would not be subject to civil liability if the school satisfied its duty of care by, for example, facilitating those activities with proper supervision, safety precautions, and instruction. Those activities are distinct from the one before us because a dispute exists over Ferndale's duty of care. Viewing the facts in the light most favorable to Meyers, this case involved an off campus class walk that did not comply with internal policies and safety precautions. We conclude that these alleged acts of negligence are not too remote or insubstantial to be the legal cause

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of Anderson's death. In this case, we cannot preclude liability as a matter of law based on legal cause.

In the alternative, Ferndale urges us to adopt an alternative "unreasonable risk" test seemingly employed in other jurisdictions, where to be liable for a harm the school district's act or omission must heighten or increase the risk beyond the ordinary risk inherent in the activity. Suppl. Br. of Pet'r at 12-17; *see Rogers v. Retrum*, 170 Ariz. 399, 403-04, 825 P.2d 20 (Ct. App. 1991); *Kazanjian v. Sch. Bd.*, 967 So. 2d 259, 265 (Fla. Dist. Ct. App. 2007); *Thompson v. Ange*, 83 A.D.2d 193, 443 N.Y.S.2d 918 (1981). Ferndale characterizes the "unreasonable risk" test as a proximate cause consideration and primarily relies on *Rogers*, a case decided by the Arizona Court of Appeals. But in that case, the court assessed the reasonableness of the risk in resolving the breach element. The issue was whether the district breached its duty to protect students by maintaining an open campus policy that allowed students to leave campus freely during school hours. The issue of breach is not before us, so this consideration is inapposite.

We affirm the Court of Appeals and remand to the trial court for further proceedings.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

Johnson, J.

WE CONCUR:

Owens, J.

Stephens, J.

Yu, J.

Whitener, J.

Schindler, J.P.T

20

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5

No. 98280-5

GORDON McCLOUD, J. (concurring)—I agree with the majority that there are genuine issues of material fact regarding whether Ferndale School District's alleged negligence was the cause in fact of Gabriel Anderson's tragic death. And I agree with the majority that the Court of Appeals erred in its analysis of legal cause, which is not coextensive with duty under our precedents and which requires its own analysis.

But I disagree in part with the majority's application of its legal cause analysis.  Broadly speaking, Meyers alleged that two separate acts breached Ferndale's duty of care: (1) Ferndale's failure to obtain parental permission for the walk and (2) the manner in which the teacher, Evan Ritchie, conducted the walk. Clerk's Papers (CP) at 569-70; Answer to Pet. for Review at 3-6. I agree with the majority's application of its legal cause analysis with regard to the issue of failure to obtain parental permission; under our precedent, we cannot preclude liability as a matter of law in this case because Ferndale's failure to obtain parental permission for the off-campus walk is not too remote from or insubstantial with regard to the

1

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

tragedy that occurred on the walk. Majority at 18-19. Because I agree with that conclusion, I concur.

I write separately, however, on the subject of the second set of acts on which Meyers bases her claim of negligence—the manner in which Ritchie conducted the walk. I would hold that as a matter of law, liability should not attach where, at the time the accident occurred, Anderson was engaging in a basic activity of daily life: walking safely on a public sidewalk, precisely where he was supposed to walk, in broad daylight.

I. THE MAJORITY CORRECTLY HOLDS THAT RITCHIE'S FAILURE TO COMPLY WITH AN ALLEGEDLY APPLICABLE PARENTAL NOTIFICATION POLICY MIGHT WELL BE A LEGAL CAUSE OF ANDERSON'S DEATH

"Proximate cause has two elements: cause in fact and legal cause." *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 436-37, 378 P.3d 162 (2016) (citing *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985) (citing *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 475, 656 P.2d 483 (1983))). Cause in fact, which "'refers to the "but for" consequences of an act—the physical connection between an act and an injury,'" is normally a question of fact for the jury. *Id.* at 437 (quoting *Hartley*, 103 Wn.2d at 778 (citing *King v. City of Seattle,* 84 Wn.2d 239, 249, 525 P.2d 228 (1974))). In contrast, legal cause "'[is] a question of law'" for the court. *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001) (alteration

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

in original) (quoting *McCoy v. Am. Suzuki Motor Corp.*, 136 Wn.2d 350, 359, 961 P.2d 952 (1998)).

That is because legal cause "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998). Legal cause "concerns whether liability *should* attach as a matter of law" even where other elements of negligence are met. *Christen v. Lee*, 113 Wn.2d 479, 508, 780 P.2d 1307 (1989) (citing *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 146, 727 P.2d 655 (1986); *Hartley*, 103 Wn.2d at 779); *Schooley*, 134 Wn.2d at 479. To that end, we determine legal cause upon "'"mixed considerations of logic, common sense, justice, policy, and precedent."'" *Schooley*, 134 Wn.2d at 479 (quoting *King*, 84 Wn.2d at 250 (quoting 1 THOMAS ATKINS STREET, FOUNDATIONS OF LEGAL LIABILITY 110 (1906))). Thus, "the court often exercises its gatekeeper function by dismissing an action without trial for lack of legal cause if the defendant's actions are too remote a cause of plaintiff's injuries." *McCoy*, 136 Wn.2d at 360.

I therefore agree with the majority's analysis of legal cause. Majority at 14 ("The question becomes whether as a matter of policy the connection between the ultimate result and the act or omission of the defendant is too remote or insubstantial to impose liability.").

3

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

And I agree with the majority's application of that legal cause analysis to Ritchie's failure to obtain parental permission slips. The "'mixed considerations of logic, common sense, justice, policy, and precedent'" that we are required to evaluate compel its conclusion. *McCoy*, 136 Wn.2d at 359-60 (internal quotation marks omitted) (quoting *King*, 84 Wn.2d at 250). As the majority correctly explains, "[t]he underlying policy considerations relevant to *duty*, including foreseeability, are the starting points of the legal cause analysis." Majority at 14. Starting from this point, Ferndale undisputedly had a duty to protect its students from reasonably foreseeable harm. *Id.* at 7-8. The underlying policy consideration for imposing that duty is the special custodial relationship between a school and its students, which recognizes the inherently involuntary nature of school attendance and the concomitant loss of parental control during school hours. *Id.* at 7 (citing *Hendrickson v. Moses Lake Sch. Dist.*, 192 Wn.2d 269, 276-77, 428 P.3d 1197 (2018)). A parental consent requirement for off-campus trips mitigates some of the intrusion into parental supervision and control inherent in the mandatory nature of school attendance for minors.

Taking the facts in the light most favorable to Meyers, there is a genuine issue of material fact as to whether Ferndale's field trip policy did apply to this off-campus walk. 1 CP at 366; 2 CP at 458-59, 480-81. And there is a genuine issue of

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

material fact as to whether the failure to comply with the policy was a cause in fact of Anderson's death: Anderson's grandmother, who was his guardian, stated that she would not have signed a permission slip for this walk had she been presented with one. 1 CP at 433. Applying the *Schooley* factors, I agree that a teacher's failure to comply with a field trip permission slip requirement that was a cause in fact of a student's death establishes legal cause. Any other conclusion would undermine the important safety considerations that motivate such a requirement— permitting parents and guardians to make decisions about what off-campus risks they will allow their child to encounter while the child is in the custody of the school. *See id.* at 317 (purpose of Ferndale's "Policy No. 2320," "Field Trips, Excursions and Outdoor Education," was to ensure "that the safety of the student is protected and that parent permission is obtained before the student leaves the school").

That is enough to preclude summary judgment on the issue of legal cause in this case. But if we consider only the second act that Meyers alleges was negligent—the manner in which Ritchie led the students on the off-campus walk— application of the five legal cause considerations leads to the opposite result: liability should not attach to the act of taking students on a walk on the sidewalk.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

II.   THE MAJORITY ERRS IN HOLDING THAT WALKING NORMALLY ON AN OPEN SIDEWALK IN BROAD DAYLIGHT MIGHT CONSTITUTE A LEGAL CAUSE OF ANDERSON'S DEATH

This tragic accident occurred while Anderson was engaging in a basic activity of everyday life, one that he engaged in during nonschool hours as well: walking on a wide, raised public sidewalk in broad daylight. 2 CP at 543-44. Logic, common sense, policy, justice, and precedent compel the conclusion that Ritchie's act of walking with Anderson on a sidewalk in an utterly typical and completely lawful manner is not an act to which we should extend liability as a matter of law.

Meyers alleges that Ritchie's act of taking the high schoolers on the walk breached Ferndale's duty of care because Ritchie and the school failed to take adequate safety precautions. Answer to Pet. for Review at 5; 2 CP at 569-70. Among the precautions that Meyers alleges could have prevented the accident were walking on a different road with a lower speed limit; walking facing traffic, instead of with backs to traffic; requiring Ritchie to wear a high-visibility vest; not crossing the road at an undesignated crosswalk; having additional adults present to supervise; and not allowing students to walk up to 200 meters ahead of Ritchie. *See Meyers v. Ferndale Sch. Dist.*, 12 Wn. App. 2d 254, 265, 457 P.3d 483, *review granted*, 195 Wn.2d 1023 (2020); 2 CP at 569-70.

6

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

But in order to constitute legal cause, the defendant's actions must not be "too remote a cause of plaintiff's injuries." *McCoy*, 136 Wn.2d at 360; *Schooley*, 134 Wn.2d at 478-49. Here, even assuming that Ferndale was negligent by failing to take these precautions, Ferndale's failure to take them is too remote from Anderson's death to impose liability. The fact that the class crossed the road at an undesignated crosswalk has no direct link to the accident, which happened not in the middle of the road but while Anderson was walking on a pedestrian sidewalk. 1 CP at 19. The day was bright and sunny, and the driver who struck Anderson did so because he fell asleep at the wheel—no amount of high-visibility vests would have prevented the accident. *Id.* at 186-87. At the time that the vehicle struck Anderson, he was walking alongside teacher Ritchie at the back of the group of students—making it clear that having an additional chaperone would not have made a difference. *Id.* at 314. Further, the fact that Anderson was walking right next to Ritchie makes it immaterial that other students were walking up to 200 meters ahead. *Id.* at 16, 314; 2 CP at 570. And the driver had been driving at around 32-34 miles per hour (within the speed limit) when he fell asleep and only one second elapsed between the driver leaving the roadway and hitting Anderson. 1 CP at 186-87. The rapidity of this impact supports the conclusion that the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

direction that Anderson was facing while walking, tragically, would not reasonably have made a difference.

Finally, there is no reasonably direct link between the route that Ritchie took and the accident. The sidewalk on which the class walked was a normal, pedestrian sidewalk that was five and a half feet wide with an eight-foot-wide shoulder between the fog line and the curb. *Id.* at 157. The road had a 40-mile-per-hour speed limit. *Id.* at 16. Uncontroverted evidence showed that pedestrians regularly used the sidewalk. *Id.* at 311. Both parties agreed that there were no particular dangers associated with the road and that there had been only one vehicle-pedestrian accident in that area of the road in the previous 10 years. *Id.* at 158; 2 CP at 570. In fact, uncontroverted evidence showed that Anderson had permission from his guardians to cross the same roadway at lunchtime to buy lunch at a nearby café, and that he regularly did so. 2 CP at 543-54. And it would be absurd to accept the premise that walking on a sidewalk with one's back facing traffic—something that common sense and experience show happen every day without incident—is itself negligent. In sum, there is no reasonably direct link between the accident and the manner in which Ritchie was leading the walk at the time of the accident.

The majority dismisses the argument that its holding would lead to unlimited liability, majority at 18, but I believe it warrants more consideration. The allegedly

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

negligent activity was undisputedly a basic activity of daily life: allowing students to walk on a sidewalk, in compliance with applicable traffic laws. If legal cause is satisfied here, then legal cause could be satisfied for accidents occurring during many basic recreational and educational activities that students enjoy, from jump rope to dance.

To be sure, we have held that legal cause exists if the alleged negligence involved an activity or omission that was inherently dangerous—such as designing vehicles, selling alcohol, or allowing unsupervised students to enter a dark, secluded room during lunch hour. *McCoy*, 136 Wn.2d at 360 (declining to preclude legal cause as a matter of law where plaintiff was injured by hit-and-run motorist while assisting victim of car accident that allegedly occurred due to car manufacturer's negligent design and manufacture of vehicle); *Schooley*, 134 Wn.2d at 483 (legal cause met as a matter of law where alleged negligence was store's unlawful sale of alcohol to minor, who then furnished it to another minor who was injured in alcohol-related accident); *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 325, 255 P.2d 360 (1953) (declining to preclude proximate cause as a matter of law where alleged negligence was allowing unsupervised students to enter dark, secluded room within school auditorium, where plaintiff was raped by other students who took her to that room).

9

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

But we have not extended legal cause to the quotidian activity of taking high school students for a walk on a sidewalk. I would not do so here. In fact, I find this case very similar to *Claar v. Auburn School District No. 408*, 126 Wn. App. 897, 110 P.3d 767 (2005), and I would apply the legal cause analysis just as the appellate court did there. In *Claar*, a school bus driver dropped off a student 20 to 100 feet past her normal bus stop in front of her house. *Id.* at 899. After the bus had pulled away and was waiting at an intersection ahead, the student crossed the road to check her mailbox and was struck by an oncoming vehicle. *Id.* The student sued, arguing in part that the accident was proximately caused by the bus driver dropping her off several feet away from her typical bus stop and then failing to properly monitor her after she exited the bus. *Id.* at 900. The Court of Appeals disagreed. It held that even assuming plaintiff proved but-for causation, she still could not prove legal causation because the theoretical link between the driver's actions and the resulting harm was just too attenuated. *Id.* at 903. The court explained that "[t]he only proof Claar offers as to the danger of the drop off point is evidence of the accident itself." *Id.*

The instant case is similar in relevant respects. Just as in *Claar*, there is no evidence showing that the roadway or sidewalk where Anderson was struck had any particular danger or risk associated with it that was different than any other

10

*Meyers v. Ferndale Sch. Dist.*, No. 98280-5
(Gordon McCloud, J., concurring)

similar location. And just as in *Claar*, none of the precautions proposed by Meyers

in this case would have prevented the accident; even if Ritchie were negligent in

failing to take those proposed precautions—like crossing the street at a different

location—any link between the hypothetical precaution and the actual tragedy that

occurred is too attenuated to support liability here.

III.     CONCLUSION

I agree that Ferndale's alleged failure to obtain required parental permission

for the walk suffices to show legal cause.  I disagree that Ritchie's decision to take

that walk on the sidewalk, at a normal pace, in broad daylight, suffices to show

legal cause.  I therefore respectfully concur.


_____
Gordon McCloud, J.


_____
González, C.J.


_____
Madsen, J.

11