# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MELANIE RAM, | No. 56583-8-II |
| Appellant, | |
| v. | |
| PORT WASHINGTON, LLC, | UNPUBLISHED OPINION |
| Respondent. | |

PRICE, J. — Melanie Ram contends that exposure to mold in her apartment owned by Port Washington LLC caused her significant medical injuries. Ram appeals the superior court's order granting summary judgment to Port Washington, arguing that Port Washington cannot show that the mold exposure did not cause her injuries. Port Washington argues that Ram has not met her burden to show that exposure to mold at its apartment complex caused Ram's injuries. We affirm the superior court's order granting summary judgment because Ram fails to show that there is a genuine issue of material fact that the mold exposure was the cause of her injuries.

## FACTS

### I. BACKGROUND

In November 2015, Ram moved to apartments owned by Port Washington. During the time she lived there, Ram occupied multiple units at the apartment complex. She moved into Unit 50 in May 2016.

On January 19, 2017, Ram reported a water leak in her ceiling to the apartment manager. A few days later, Ram reported a patch of mold growing on the ceiling near the leak. Apartment maintenance repaired the leak and cleaned the mold patch on February 3. Distressed over the mold, Ram moved out of Unit 50 on February 10, breaking her lease. She officially vacated the apartment complex on February 15, 2017.

Prior to the management's cleaning and repair of the mold patch, Ram took a sample of the mold for testing. The testing lab results identified the mold as Ulocladium. Ram sent the sample to a second testing lab, which also identified the mold as Ulocladium. The report from the second lab stated, "Ulocladium is generally not pathogenic," and "[v]ery rarely does Ulocladium cause human disease." Clerk's Papers (CP) at 127.

## II. MEDICAL RECORDS

Ram's medical records show that she sought medical attention in 2012 for constipation, rectal bleeding, as well as pain in that same area. Ram was diagnosed with hemorrhoids and a perirectal abscess. In 2016, Ram again sought medical attention for rectal bleeding and abdominal pain.

On January 31, 2017, Ram sought medical attention for epigastric pain. Ram saw Dr. Christine Lomotan, who stated in her report that "Ram is a 39 year old female [who] thinks that it is the black mold in her ceiling and bathroom that is causing [her] symptoms. She is sure it is toxic black mold." CP at 159. Dr. Lomotan also stated, "I told [Ram] it would be difficult to pinpoint her symptoms to the black mold especially since she is a smoker and [gastroesophageal reflux disease] can be caused by the nicotine." CP at 159. Dr. Lomotan continued, "[A]lso told her with

molds, it's usually respiratory symptoms but certainly can be from molds. The causality of black mold and her GI symptoms have to be proven." CP at 159.

On February 16, 2017, Ram saw Dr. William Butler, an allergy and asthma specialist. The appointment notes show that Ram reported a rash on her right shoulder, palpitations, tachycardia, throat tightening, chest pressure, and shortness of breath. The notes also stated that Ram's symptoms subsided when she stopped living at the Port Washington Apartments. Dr. Butler performed allergy testing on Ram's skin, but did not have a test for Ulocladium. Ram's skin allergy tests were negative. Dr. Butler also took a blood sample to perform a blood allergy test specific to Ulocladium, which came back negative, indicating that she was not allergic to Ulocladium.

On September 25, 2017, Ram saw Dr. Howard Krouse, another allergist. Ram reported that she was experiencing heartburn, rectal bleeding, difficulty swallowing, and a skin rash on her right shoulder. Ram also reported that she had shortness of breath for a span of 20 years and her symptoms had worsened in the week prior to that appointment. Ram reported that she had recently gone on a trip to California, where she stayed in a moldy motel room and had experienced chest congestion.

Dr. Krouse's appointment notes stated that the cause of Ram's episodes of shortness of breath from six months prior could not be identified, and opined that Ram's smoking was contributing to her respiratory symptoms. Dr. Krouse conducted a skin allergy test with Ram's mold sample from Unit 50, and the test result was negative.

3

About three years later, in May 2021, Ram saw Dr. David Buscher. Ram reported that she experienced "intestinal symptoms, pain, heartburn, bloody stools, sinus congestion, throat problems, difficulty with apnea at night, itchy rashes, [and] difficulty breathing." CP at 187. Dr. Buscher ordered testing for mold exposure. Based on the test results, Dr. Buscher determined that Ram had been exposed to two types of mold, Stachybotrys (black mold) and Aspergillus. Dr. Buscher stated that Ram's symptoms were consistent with mold exposure.

III.  LAWSUIT AND DISCOVERY

In January 2020, Ram filed a complaint asserting a claim for negligence against Port Washington.[1] In her complaint, Ram claimed that her mold exposure in Unit 50 caused gastrointestinal bleeding and a "type I allergic reaction (anaphylactic shock)." CP at 34.

In April 2021, Port Washington deposed Ram. Port Washington asked Ram what physician had diagnosed her with anaphylactic shock, and in response, Ram pointed to herself. Port Washington also asked, "[D]id any specialist or a doctor or anyone tell you that you had taken toxins or poisons with you because of your items or is that something you determined on your own?" CP at 112-13. Ram responded, "No. The doctors actually, most of them actually are basically aggressive, just by my experience refusing medical attention as soon as you mention mold. I had to figure it out on my own." CP at 113.

Ram filed an amended complaint on October 5, 2021. Ram asserted that she additionally experienced muscle aches, skull pressure, irregular menstrual cycles, and an inability to self-regulate her body temperature. The court allowed Ram to assert additional damages.

---

[1] Ram initially filed her lawsuit in Pierce County Superior Court. Following Port Washington's motion for improper venue, the lawsuit was moved to Kitsap County Superior Court.

Port Washington also deposed Dr. Buscher. Dr. Buscher stated that during Ram's first appointment with him in 2021, he diagnosed her with "headaches, sinusitis, pharyngitis, fatigue, gastrointestinal symptoms, and sleep disorder." CP at 188. Dr. Buscher stated that these are all symptoms of mold exposure, and diagnosed her accordingly. Dr. Buscher stated that once exposed, the symptoms of mold exposure do not always resolve after removal of the mold.

Dr. Buscher ordered a skin antigen test and mycotoxin test for Ram. During her skin antigen test, Ram showed a reaction to Stachybotrys, Candida, and dust mites. Ram's positive skin antigen test result meant to Dr. Buscher that Ram had been exposed to mold. For the mycotoxin test, Ram tested positive for mycotoxins associated with Stachybotrys and Aspergillus molds. Dr. Buscher stated that Ram's positive test showed exposure to those molds.

Dr. Buscher confirmed that the tests he performed were not able to show when or where Ram's mold exposure took place. Dr. Buscher also confirmed that it could be possible that Ram's exposure could be to a current source of mold. When told that Ulocladium was the only mold that was found in apartment Unit 50, Dr. Buscher stated that because Ram tested positive for exposure to mold other than Ulocladium, there was another source of contamination or exposure.

IV. SUMMARY JUDGMENT

Port Washington moved for summary judgment, arguing that Ram could not show that mold exposure in Unit 50 was the cause of her medical problems. Port Washington supported its motion with a declaration from Dr. Paul Darby, a clinical toxicology and environmental medicine physician. Dr. Darby's declaration stated:

> Based on my review of Ms. Ram's medical records I have made the following conclusions on a more probable than not basis, to a reasonable degree of medical certainty. Ms. Ram is not allergic to Ulocladium, which was the only variety of mold identified by two separate testing companies based on a sample obtained by Ms. Ram from her apartment at Port Washington. Ms. Ram's gastrointestinal issues were preexisting and not attributable to mold exposure. Any reports of respiratory symptoms are attributable to her history of smoking and are not attributable to mold exposure. And, Ms. Ram's allegation she suffered from anaphylactic shock is unsubstantiated by any record and presents as a panic attack, not the result of any environmental factor. There is no medical evidence that Ms. Ram suffered any medical issue attributable to an environmental condition in her apartment at the Port Washington Apartments.

CP at 207.

Ram responded that her injuries were the result of mold exposure at Port Washington. She asserted that the mold sample she took from Unit 50 had other mold strains in it, but she did not have more testing to confirm it.

The superior court granted Port Washington's motion for summary judgment and entered an order dismissing Ram's claims against Port Washington.

Ram appeals.

## ANALYSIS

Ram argues that the superior court erred by granting summary judgment because Port Washington cannot show that it did not cause her medical problems with the mold from Unit 50.[2] We disagree.

---

[2] Ram also argues that we should reverse the superior court's order granting summary judgment because it did not provide an explanation about why her claim was dismissed and the order "creates an illusion of safety." Br. of Appellant at 14. However, Ram does not provide any citation to the record or authority to support her argument about the superior court's order being an "illusion of safety." Because we do not consider arguments that are unsupported by citations to authority or the record, we decline to address these arguments. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)).

To succeed in a claim for negligence, the plaintiff must show (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Turner v. Dep't of Soc. & Health Servs.*, 198 Wn.2d 273, 284, 493 P.3d 117 (2021). Proximate cause has two elements. *Rasmussen v. Bendotti*, 107 Wn. App. 947, 958, 29 P.3d 56 (2001). "The first, cause in fact, requires some physical connection between the act . . . and the injury . . . ." *Id.* "The second element of proximate cause involves legal causation." *Id.*

We review a superior court's grant of summary judgment de novo. *Crisostomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Id.*

Summary judgment is subject to a burden-shifting scheme. *See id.* The moving party first bears the burden of showing the absence of an issue of material fact. *Id.* "A moving defendant can meet this burden by demonstrating the plaintiff cannot support [her] claim with any evidence." *Id.*

The burden then "shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact." *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

"The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain." *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780, 133 P.3d 944, *review denied*, 158 Wn.2d 1017 (2006). Allegations in the complaint are not evidence and do not defeat summary judgment. *See, e.g.*, *Retail Store Emps. Local 631 v. Totem Sales, Inc.*, 20 Wn. App. 278, 281, 579 P.2d 1019 (1978).

Here, Port Washington had the initial burden to show the absence of an issue of material fact. Port Washington asserted that Ram cannot show a causal link between her symptoms and the mold patch in Unit 50. First, it pointed out that the only mold identified from the apartment was Ulocladium. Next, it cited to Ram's medical records that showed her doctors confirmed that Ram was not allergic to Ulocladium and none attributed her symptoms to exposure to this type of mold. Finally, Port Washington supplied Dr. Darby's declaration stating that, on a more probable than not basis, Ram's gastrointestinal symptoms were preexisting, and her respiratory symptoms were attributable to her smoking and not to Ulocladium, the only mold that was identified. With this showing, Port Washington satisfied its initial burden on summary judgment.

The burden then shifted to Ram to show specific facts that revealed a genuine issue of material fact. Ram supported her arguments principally with Dr. Buscher's deposition testimony. Dr. Buscher identified that Ram's symptoms were consistent with mold exposure. Additionally, Ram's mold exposure tests showed that she was exposed to Stachybotrys and Aspergillus, not

Ulocladium. However, Dr. Buscher could not confirm when or where Ram was exposed to those types of mold, and he conceded there could have been an exposure that was ongoing at the time of his appointment with Ram, years after Ram's residence in Unit 50.

Dr. Buscher's testimony failed to create a genuine issue of material fact. Although Dr. Buscher's testimony supported Ram's concern that she was suffering from mold exposure, there was no connection of this testimony to the mold found in Unit 50. Only Ulocladium was found in Unit 50, and Dr. Buscher provided no support for any ill-effects from Ulocladium.[3]

Ram argues that there were other kinds of mold present in Unit 50 that caused her symptoms. However, Ram offers no evidence to support this assertion; two separate labs analyzing Ram's mold sample only identified Ulocladium.

Even viewing the evidence in the light most favorable to Ram, Ram did not meet her burden to show specific facts to reveal a genuine issue of material fact as to whether the mold from Unit 50 was the cause of her medical complaints. Accordingly, summary judgment was appropriate.

CONCLUSION

The superior court did not err in granting summary judgment in favor of Port Washington. We affirm.

---

[3] No other medical provider connected Ram's symptoms to Ulocladium either. The record shows that Ram's gastrointestinal symptoms dated back to at least 2012, demonstrating that these problems may have been ongoing. And Ram's medical records show that multiple physicians opined that her history of smoking was the cause of her respiratory symptoms. While Dr. Lomotan stated that molds generally could cause respiratory and gastrointestinal problems, the doctor did not connect her symptoms to Ulocladium.

No. 56583-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

WORSWICK, P.J.

VELJACIC, J.